MONTANA MEAT CO. OF HELENA, Appellant, *v.* MISSOULA LIVESTOCK AUCTION CO., Respondent.

No. 9041.
Submitted March 9, 1951. Decided April 27, 1951.
230 Pac. (2d) 955.

Mr. Melvin E. Magnuson, Helena, for appellant.

Mr. Paul T. Keller, Helena, for respondent.

Mr. Magnuson and Mr. Keller argued orally.

MR. JUSTICE METCALF:

On September 20, 1949, the Montana Meat Company sold more than 20 head of cattle to a rancher in Lewis and Clark county and as part payment took a note in the sum of $300.00. The note was secured by a chattel mortgage on the cattle duly and regularly filed in the office of the county clerk and recorder of Lewis and Clark county, Montana.

On November 25, 1949, the mortgagor without the knowledge and consent of the mortgagee included a mortgaged calf in a shipment to the Missoula Livestock Auction Company, a licensed Montana livestock market, for sale. It was sold and the mortgagor received the selling price of $72.50.

Prior to December 8, 1949, the Montana Meat Company notified the Missoula Livestock Auction Company by mail that it had a mortgage on certain described cattle of the mortgagor. On the 8th day of December, 1949, the mortgagor sold another mortgaged calf through the Missoula Livestock Auction Company and received the sum of $75.00 in payment therefor. The second sale was also without the knowledge or consent of the mortgagee. The Montana Meat Company failed to file a notice of chattel mortgage with the recorder of marks and brands of the state of Montana as required by section 52-319, R. C. M. 1947, as amended by Chapter 36, Laws of 1949.

This is an action by the Montana Meat Company against the Missoula Livestock Auction Company to recover the sum of $147.50 damages for the conversion of the two calves. There are two causes of action. The first cause of action is based on the theory that filing of the chattel mortgage for record in the office of the clerk and recorder of Lewis and Clark county is sufficient to give the Missoula Livestock Auction Company constructive notice of the mortgage without the necessity of filing with the recorder of marks and brands as required by Chapter 36, Laws of 1949.

The second cause of action is for the conversion of the second calf and it presents the additional question of the effect of the letter sent to the Missoula Livestock Auction Company by the Montana Meat Company. It is the plaintiff's contention that the letter imparted actual notice of the existence of the chattel mortgage and therefore there was no necessity of filing the statutory notice with the recorder of marks and brands.

Judgment was for the defendant Missoula Livestock Company on both causes of action and the plaintiff appealed.

Livestock markets are regulated by the livestock commission and sanitary board of the state of Montana. R. C. M. 1947, sec. 46-907. No person may operate a livestock market in this state without first obtaining from the commission a certificate of public convenience and necessity. R. C. M. 1947, sec. 46-908. Livestock markets are required to keep records open to the in-

spection by the commission, are subject to inspection by a stock inspector or the state veterinarian, or the sheriff of any county, are required to conform to certain sanitary regulations, to post a bond and to pay an annual license fee to the livestock commission.

In addition, the livestock markets must conform to the provisions of the Packers and Stockyards Act, 42 Stat. 159, 7 U. S. C. A. secs. 181-229, and to the rules and regulations of the secretary of agriculture. The United States Supreme Court has held that stockyards licensed under the provisions of Packers and Stockyards Act are public utilities. Tagg Brothers & Moorhead v. United States, 280 U. S. 420, 50 S. Ct. 220, 74 L. Ed. 524; Stafford v. Wallace, 258 U. S. 495, 42 S. Ct. 397, 66 L. Ed. 735, 23 A. L. R. 229.

The 1949 legislature provided by Chapter 36, Laws of 1949, that livestock markets were not liable for the proceeds of livestock sold by such markets unless notice was given by filing a notice of the chattel mortgage in the office of the general recorder of marks and brands of the state of Montana. That Chapter reads:

"An Act to Amend Section 3308.1 Revised Codes of Montana, 1935 [now R. C. M. 1947, sec. 52-319], Providing for the Filing of Notice of Chattel Mortgages Upon Livestock in the Office of the General Recorder of Marks and Brands; Providing for Furnishing Lists of Said Notices of Mortgages to All Stock Inspectors; Providing for the Prescribing of Forms for the Livestock Commission and to Provide That No Livestock Market Shall Be Held Liable to Any Mortgagee Who Fails to Record His Notice of Mortgage With the Recorder of Marks and Brands for Money Paid to the Mortgagor.

"Be it enacted by the Legislative Assembly of the State of Montana:

"Section 1. That Section 3308.1 Revised Codes of Montana, 1935, be and the same is hereby amended to read as follows:

" 'Section 3308.1. Notices of Chattel Mortgages on Livestock, Renewals, Assignments and Satisfactions to be Filed by Re-

corder of Marks and Brands—Lists to be Furnished Stock Inspectors, Livestock Markets Not Liable for Mortgages When Notice Thereof Not Filed. The general recorder of marks and brands of the State of Montana shall accept and file in the office of the general recorder of marks and brands, notices of chattel mortgages, renewals, assignments and satisfactions thereof, upon the livestock owned by any person, firm, corporation, or association, and bearing his, their, or its recorded brand, and shall list such notices on the official records of marks and brands kept by him, and also shall cause to be listed said notices in the offices of the stock inspectors, employed by the livestock commission and stationed at the several central livestock markets where records are kept of marks and brands. All forms on which such notices shall be given shall be prescribed by the livestock commission and shall be furnished by the mortgagee of livestock, who shall give such notice. No livestock market to which livestock is shipped shall be held liable to any mortgagee for the proceeds of livestock sold through such livestock market by the mortgagor unless notice of such mortgage is filed as 'hereinabove provided.' ''

Plaintiff contends that Chapter 36 is special legislation; that it creates an unreasonable classification; that it provides for an illegal delegation of legislative authority and deprives the plaintiff and all other persons similarly situated of property without the due process of law, all in violation of the Constitution of the State of Montana.

The plaintiff points to section 26, Article V of the Montana Constitution, which provides: ''The legislative assembly shall not pass local or special laws in any of the following enumerated cases, that is to say: * * * granting to any corporation, association or individual * * * any special or exclusive privilege, * * * authorizing the creation, extension or impairing of liens * * *.''

Plaintiff asserts Chapter 36, Laws of 1949, confers a special privilege and immunity upon livestock auction markets, a privilege which is not enjoyed by other classes and types of sales agents or agencies.

The generally accepted rule is: "An agent, commission merchant, or broker who sells mortgaged property for the mortgagor is liable to the mortgagee for conversion * * *". 10 Am. Jur., Chattel Mortgages, sec. 200, p. 848. See: Restatement, Agency, sec. 349, p. 765; Restatement, Torts, sec. 233(1), p. 595; and the annotations in 20 A. L. R. 122; 99 A. L. R. 408.

In Sullivan Company v. Wells, 89 F. Supp. 317, 320, U. S. District Court Nebraska, the court discussed the effect of this rule upon licensed livestock markets. "It should be remembered that the common-law rule of agency has become a harsh one as the relationship between principal and agent has become more and more impersonal. The common-law rule was based on the reasoning that since the agent is free to choose whom he wishes to serve as his principal, that he should be held liable if he chooses to assist, even unknowingly, his principal in the perpetration of a fraud upon a third person. And the rule is not unjustly oppressive as long as the agent remains free to choose whom he will serve. But the Packers and Stockyards Act has so limited the defendant's freedom of choice as to make a strict application of the common-law rule oppressive in this case."

Since stockyards under the federal law are in the nature of public utilities and under state statutes are subject to rigid control and inspection and can only be established after hearing and issuance of a certificate of public convenience and necessity, they are of a different class than ordinary agents. They are required to furnish their stockyards services without discrimination. Their rates are regulated. They do a large business and therefore their services are largely impersonal. They are not at liberty to select their customers or the principals for whom they sell. They are thus inhibited in their freedom to investigate the title of the livestock they sell. Because of their volume of sales and the impersonal relationship with their patrons they should not be required to have the same responsibility in vouching for the good faith and the integrity of the sellers they represent that other agents have. They are required and should be required to follow explicit instructions from their

principals. They must make settlement of accounts within such time that it would be economically impossible to investigate the records of all of the county clerks and recorders in the state of Montana.

The legislature is justified in treating rigorously regulated ▆ and licensed livestock markets differently than ordinary agents or factors. If in the legislative wisdom social convenience is subserved by removal of certain obstructions in order that the sale of livestock may proceed in an orderly manner, the legislature is free to make such a classification. Without legislative action there are cases that strongly assert that stockyards should be treated differently than other agents. See: Blackwell v. Laird, 236 Mo. App. 1217, 163 S. W. (2d) 91. The contrary opinion is represented by the leading case of Mason City Production Credit Ass'n v. Sig Ellingson & Co., 205 Minn. 537, 286 N. W. 713. See also Birmingham v. Rice Bros., 238 Iowa 410, 26 N. W. (2d) 39, annotated in 2 A. L. R. (2d) 1108, which was a case decided by divided court and in both the majority and dissenting opinions the differences between licensed regulated stockyards and ordinary factors and agents are brought out and discussed. Certainly where without specific legislation there is strong authority for making licensed stockyards an exception to the general common-law rule of agency with respect to the liability of the agent for the tortious act of the principal, there are valid grounds for the legislature to except them by express legislation.

As pointed out in 47 Columbia Law Review 861, common ▆ carriers, teamsters, bankers, auctioneers, brokers, packers and warehousemen have been excepted from the rule that the agent is not protected from liability for conversion when he sells to a third party goods or chattels to which his principal had no title.

The courts in these cases have designated the agents as ''mere conduits'' of title from the principal to the third party and have excepted them from liability for conversion. There is no reason why the legislature cannot add livestock markets to this

list. The classification is a legitimate one. It is reasonable—it is based upon sound principles of law and it operates equally upon every person or thing within the class. Therefore it meets the test of constitutionality set forth by this court in State ex rel. Redman v. Meyers, 65 Mont. 124, 128, 210 Pac. 1064.

Nor is there a deprivation of property without due process of law. The mortgagee still has the chattel mortgage and a right of action against the mortgagor. The only additional requirement is that if a chattel mortgagee wants to hold a livestock market to a common-law rule of agency law, one that is admittedly harsh under the present economic conditions, he must in addition to filing his chattel mortgage in the office of the county clerk and recorder as he has heretofore done, file it in the office of the general recorder of marks and brands of the state. This he failed to do. The livestock market is not given complete immunity as asserted by the plaintiff. Chapter 36, Laws of 1949, merely provides that if the notice given is not in strict conformity with the recording statute the livestock market is not liable to the mortgagee for conversion.

There is no merit to the contention that the title of the Act is not adequate and does not express the subject of the Act, nor is there any merit to the contention that Chapter 36 relates to more than one subject. It needs only a reading of the title and an examination of the Act in question to demonstrate this.

The livestock commission has established certain forms for the use of the parties in the filing of their notice of chattel mortgage with the recorder of marks and brands. These forms are designed to give the recorder and the livestock inspectors the necessary information so that they can identify the cattle mortgaged. The drafting of such forms and the contents thereof was properly delegated to the livestock commission and there is no showing that they have gone beyond the purview of the statute in performing what is merely a ministerial and administrative act in prescribing the forms necessary to carry out the declared will of the legislature.

As to the question of actual notice, the plaintiff's complaint alleged: "Prior to the 8th day of December, 1949, and prior to the time of sale hereinafter described, plaintiff advised the defendant and several other livestock auction markets in writing of the aforesaid facts relative to the contents and filing of said mortgage and gave said markets, including this defendant, an accurate and correct description of the cattle so covered."

Defendant's answer "admits that plaintiff gave notice in writing regarding a chattel mortgage on file in the county of Lewis and Clark county, Montana on certain cattle mortgaged to the plaintiff * * *".

The writing was not incorporated in the pleadings nor was any evidence introduced on this phase of the case. Interrogation of counsel during the oral argument elicited the information that notice was given by letter mailed to the market. But there was no showing as to the contents of the letter or how long prior to the sale it was mailed.

The trial court found: "That prior to the 8th day of December, but not prior to the 25th day of November, the Montana Meat Company of Helena gave the defendant, Missoula Livestock Auction Company, notice in writing of its mortgage so recorded in Lewis and Clark County."

By Chapter 36, Laws of 1949, the following sentence was added to R. C. M. 1947, section 52-319: "No livestock market to which livestock is shipped shall be held liable to any mortgagee for the proceeds of livestock sold through such livestock market by the mortgagor unless notice of such mortgage is filed as hereinabove provided."

Whether actual notice is a substitute for the constructive notice imparted by the recording act is a matter of statutory construction and determination of legislative intent. 3 Jones, Chattel Mortgages & Conditional Sales, 6th Ed., sec. 1076, p. 149. See Annotations in 72 A. L. R. 165 and 159 A. L. R. 663.

In 8 Thompson on Real Property, Perm. Ed., sec. 4451, p. 292, the rule is stated: "The general principle that actual notice is equivalent to recording applies only where there is

nothing in the statute to indicate a contrary intention. Where recording is expressly made necessary to the validity of an instrument, it is held that actual notice will not operate as an equivalent.''

Among the cases cited in support of this proposition are Ross v. Menefee, 125 Ind. 432, 25 N. E. 545, and Travis v. Bishop, 13 Metc. 304, 54 Mass. 304. These cases and others are cited as authority in the Montana case of Westheimer v. Goodkind, 24 Mont. 90, 60 Pac. 813, holding that actual knowledge of the existence of a chattel mortgage not entitled to record did not validate it against a third person. Analogous cases are John Caplice Co. v. Beauchamp, 22 Mont. 258, 56 Pac. 278, and Milburn Manufacturing Co. v. Johnson, 9 Mont. 537, 24 Pac. 17.

By the 1949 amendment the legislature clearly evinced an intention to require that livestock markets be notified of mortgage liens by filing with the recorder of marks and brands and in no other way.

Notice to livestock markets of the existence of a chattel mortgage on livestock, in the absence of fraud, can be given only in the statutory manner. Because of the volume of sales and the public service performed under rigid regulation and control, it is legitimate for the legislature to require lienholders to comply with the terms of the recording statute or lose their lien and to permit the livestock markets to rely solely upon the information submitted to them by the recorder of marks and brands through the deputy livestock inspectors stationed at the salesyard.

The judgment is affirmed.

MR. CHIEF JUSTICE ADAIR, and ASSOCIATE JUSTICES BOTTOMLY, FREEBOURN and ANGSTMAN, concur.