No. 13369 & 13370

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

BATEY LAND & LIVESTOCK COMPANY, a Montana Corporation,
                    Plaintiff and Appellant,
        -vs-
ROBERT NIXON,

                    Defendant and Third Party Plaintiff
                    and Appellant versus Fred Hall and
                    Respondent to Batey

        -vs-
ROBERT BRAATON and HELEN BRAATON, his wife and FRED HALL,
                    Third Party Defendants and Respondents.
----------------------------------------------------------------
BATEY LAND & LIVESTOCK, a Montana Corporation,
                    Plaintiff and Appellant,
        -vs-
ROBERT PAULEY,

                    Defendant and Third Party Plaintiff
                    and Appellant versus Fred Hall and
                    Respondent to Batey

        -vs-
ROBERT BRAATON and HELEN BRAATON, his wife and FRED HALL,
                    Third Party Defendants and Respondents.

---

Appeal from:  District Court of the Sixteenth Judicial District,
              Honorable  A. B. Martin, Judge presiding.

Counsel of Record:

    For Appellants:

        Krutzfeldt and Haker, Miles City, Montana
        W. J. Krutzfeldt argued, Miles City, Montana
        Anderson, Symmes, Forbes Peete & Brown, Billings,
         Montana
        James L. Jones argued, Billings, Montana

    For Respondents:

        Lucas, Jardine and Monaghan, Miles City, Montana
        Thomas M. Monaghan argued, Miles City, Montana

---

                            Submitted: January 12, 1977
                            Decided: MAR 2 1977

Filed: MAR 2 1977

_Thomas J. Kearney_
                            Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

Batey Land & Livestock Company appeals from summary judgment rendered for defendants Robert Nixon and Robert Pauley by the district court, Custer County, in actions for conversion. Defendants Nixon and Pauley appeal from the district court's order dismissing their third party complaints against Fred Hall for indemnification.

On May 2, 1968, Batey Land & Livestock Company (Batey) sold 215 head of Hereford cattle, 198 cows and 17 bulls, branded Heart bar H, to Robert and Helen Braaton. Payment was made by promissory note in the amount of $43,000 executed by Braatons and payable in installments of $10,000 plus interest on November 1st of each year commencing in 1968. Braatons also executed a security agreement on May 2, 1968, pledging the cattle as security for the indebtedness. A financing statement was filed with the Rosebud County clerk and recorder on May 6, 1968.

On May 2, 1968 Braatons borrowed $13,570 from the Miles City Production Credit Association (PCA) and executed a security agreement listing items of personal property, including cattle, as collateral for the loan:

> "2. LIVESTOCK, EQUIPMENT AND/OR OTHER GOODS___ All livestock, equipment, and/or other goods of every kind and description now owned or hereafter acquired by the Debtor, including, but not limited to, the following:
>
> Fifty Head of Hereford Cattle, Branded: H̅ Left Rib, subject to prior lien, and described as follows:
>
> 48 Cows
> 2 Bulls
>
> Two Hundred Fifteen Head of Hereford Cattle, Branded: ↄ̵H Right Ribs, held by Bill of Sale, subject to prior lien, and described as follows:
>
> 198 Cows
> 17 Bulls

ALSO: One Hundred Per-Cent (100%) of the increase
from One Hundred Ninety-Eight Head of Hereford
Cows, branded:  ⋀  Right Ribs, said increase to be
Right Ribs;        branded:"

The security agreement provided that Braatons not sell or dispose

of any of the collateral without the consent of PCA.

On May 9, 1968, Robert L. Batey, acting in his capacity as

president of Batey Land & Livestock Company, executed a subordina-

tion agreement prepared by PCA.  By the terms of  the agreement,

Batey consented to give PCA a first lien on Braatons' personal

property, not to exceed $13,570 the amount of the loan:

> [May 9, 1968 Subordination Agreement]
> "In order to assist him to obtain this loan,
> I agree that any interest or lien which I have or
> may obtain during the life of such security agreement,
> in or on his real or personal property (including crops),
> and the increase from 198 Hereford cows, branded: ⊖⫪
> marked on right side, will be considered junior and in-
> ferior to that lien which you may take on such property
> to secure your loan.  I further agree that I will not
> disturb him in the possession of either his real or
> personal property, for a period not to exceed eight months
> from this date, without first securing your written consent."

On May 21 and May 28, 1968, PCA filed notices of security

agreement with the Montana Livestock Commission, Helena, Montana,

to perfect its security interest embodied in the May 2, 1968

security agreement.  Neither notice referred to or specified any

livestock branded Heart bar H.  The only livestock specified were

those cattle branded Lazy H hanging H (ꞥ) and M hanging O ( ⋈ ).

Braatons negotiated a second loan with PCA for $21,610

and executed a second security agreement on October 31, 1968.  This

security agreement also listed items of personal property, including

cattle, as collateral for the loan:

> "LIVESTOCK, EQUIPMENT AND/OR OTHER GOODS——All livestock,
> equipment,and/or  other goods of every kind and descrip-
> tion now owned or hereafter acquired by the Debtor, in-
> cluding, but not limited to, the following:

- 3 -

Fifty Head of Hereford Cattle, Branded: 〄 Left Ribs and Thirty Head of Hereford Calves, Branded: ⋏ Right Ribs, described as follows:

48 Cows          30 Calves
 2 Bulls

Two Hundred Seventeen Head of Hereford Cattle, Branded: ☽-Ƕ Right Ribs, subject to a first security interest held by Batey Land & Lovestock Co., described as follows:

200 Cows
 17 Bulls

ALSO: One Hundred Per Cent (100%) of the increase from Two Hundred (200) Head of Hereford Cows, Branded: ☽-Ƕ Right Ribs, said increase to be branded: ⋏ Right Ribs;"

On October 31, 1968, Robert L. Batey, once again acting in his capacity as president of Batey Land & Livestock Company, executed a second subordination agreement. In the same language used in the first subordination agreement, Batey consented to give PCA a first lien on Braatons' personal property, not to exceed $21,610 the amount of the second loan:

[October 31, 1968 Subordination Agreement]
"In Order to assist him to obtain this loan, I agree that any interest or lien which I have or may obtain during the life of such security agreement, in or on his real or personal property (including crops), and the increase from 200 Hereford cows, branded: ☽-Ƕ marked on right side, will be considered junior and inferior to that lien which you may take on such property to secure your loan. I further agree that I will not disturb him in the possession of either his real or personal property, for a period not to exceed twelve months from this date, without first securing your written consent."

On November 19, 1968 PCA filed a notice of renewal of security agreement with the Montana Livestock Commission in order to perfect its security interest embodied in the October 31, 1968, security agreement. This notice, as in the case of the prior two notices, failed to refer to or specify Heart bar H cattle, specifying only cattle branded Lazy H hanging H and M hanging O.

- 4 -

On April 21, 1969, Batey filed a notice of security interest with the Montana Livestock Commission to perfect its security interest embodied in the May 2, 1968, security agreement. This notice specified livestock branded Heart bar H as being the subject matter of the security agreement dated May 2, 1968, and listed Robert and Helen Braaton as the debtors.

Subsequent to the above transactions, Braatons solicited the services of Fred Hall, a livestock broker, to negotiate the sale of "Braatons'" cattle. On December 6, 1969, Hall negotiated with Robert Nixon for the sale of 80 head of cattle, branded Heart bar H for $18,400. Hall further negotiated with Robert Pauley the sale of 20 head of cattle, branded Heart bar H, for $4,200 on December 12, 1969. Hall received payment of the entire amount from both sales ($22,600) and issued his own personal check made payable to "Robert R. Braaton & P.C.A." in the amount of $21,990. ($22,600 less $610 Hall's commission for the two sales at $10 per head.)

On April 26, 1971 Batey filed suit against Braatons in Rosebud County to recover sums owed by Braatons. The only payments made by Braatons on the $43,000 promissory note appear to be a payment of $10,000 plus interest made on November 4, 1968, and a payment of $10,000 plus interest made on November 11, 1969.

On the same date as the filing in Rosebud County, Batey filed the instant actions in the district court of Custer County against Nixon and Pauley, for conversion of the Heart bar H cattle. Batey obtained a judgment against Braatons in the amount of $15,000 on July 22, 1974. That judgment remains entirely unpaid, the Braatons apparently being judgment proof. On February 11, 1974, Nixon and Pauley filed amended third party complaints against the Braatons and Hall, alleging breach of warranty of title.

After the district court, Rosebud County, determined the liability of Braatons, and upon submission of the instant matters to the district court, Custer County, Nixon, Pauley and Hall moved for summary judgment. Batey responded by filing a cross-motion for summary judgment. On March 7, 1975 the district court entered its memorandum and order denying all defendants' motions for summary judgment and granting Batey's motion on its theory of wrongful conversion. The district court concluded Batey had a perfected security interest in the cattle and Nixon and Pauley had converted the collateral by their purchases. The court found Hall to be a joint tortfeasor in the conversion of the cattle, but failed to find sufficient proof establishing fraud.

Subsequent to the district court's order, Nixon and Pauley discovered the subordination agreements which gave PCA a paramount lien. By order dated April 30, 1975 the district court granted Batey's motion to set aside the court's order granting summary judgment in favor of Batey. A trial without jury was ordered.

The district court granted summary judgment for Nixon and Pauley on March 22, 1976. In its order and memorandum the district court found PCA had a security interest in the Heart bar H cattle for $35,360, the amount of the two loans; that Batey signed agreements subordinating its security interest to the security interest held by PCA; that the subordination agreement signed by Batey was not ambiguous; that the security interest agreement between Braatons and PCA gave Braatons the right to sell the Heart bar H cattle with the consent of PCA; that PCA's acceptance of the proceeds from the sales constituted consent to the sales; that Nixon and Pauley had no actual notice of Batey's security interest; and that the sale of the cattle to Nixon and Pauley was conducted openly, fairly and at market value.

The district court further ordered the actions against the third party defendants be dismissed with prejudice.

As in the district court, this Court will treat the separate actions against defendants Nixon and Pauley as one, because of the similarity of facts and legal issues presented.

On review, initially Batey contends the district court erred when it granted defendants' motion for summary judgment. In other words, it is argued the district court erred when it found the PCA possessed a perfected first lien; that the Heart bar H cattle were the subject matter of the unambiguous subordination agreement executed by Batey;and there was no issue of fact to be decided by a jury.

A summary judgment can be granted only where the pretrial record discloses (1) the absence of any genuine issue of material fact and (2) that the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. For an extensive discussion of the principles of summary judgment under Rule 56(c) see: Harland v. Anderson, _____Mont._____, 548 P.2d 613, 33 St.Rep. 363.

This Court's initial inquiry concerns the presence or absence of a genuine issue of material fact. Batey contends PCA's failure to specify Heart bar H cattle in its notices of security agreement and notice of renewal of security agreement is proof of PCA's lack of intent to secure a first lien on the Heart bar H cattle. In light of this evidence, Batey contends the subordination agreements are ambiguous and their interpretation is a genuine issue of material fact. It is argued we must look to the intent of the parties and the underlying circumstances surrounding

- 7 -

the execution of the subordination agreements in resolving the legal effect of the subordination agreements. We disagree.

The subordination agreements executed by Batey are clear and specific. Each of the instruments contains language subordinating Batey's lien on Braatons' real or personal property, including crops and the increase from the Heart bar H cattle, to PCA's lien. Sections 13-704 and 13-705, R.C.M. 1947, are controlling:

> Section 13-704: "Intention to be ascertained from language. The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."

> Section 13-705: "Interpretation of written contracts. When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible; subject, however, to the other provisions of this chapter."

The subordination agreements fail to present a question of fact. The plain and clear meaning of the instruments is to control and the intent of the parties is to be ascertained from the instruments. Fulton v. Clark, 167 Mont. 399, 538 P.2d 1371, 32 St. Rep. 808. As a matter of law, the subordination agreements give PCA a first lien on the Heart bar H cattle in the amount of $35,360. Since the proceeds of the sale, which the district court found to be open, fair and at market value, were less than this amount, the PCA did not exceed its security interest in the collateral.

Batey contends that even if the subordination agreements are found to give PCA a superior lien, PCA failed to perfect its security interests when it failed to specify Heart bar H cattle as being the subject matter of the security agreements in the notices of security agreement and the notice of renewal of security agreement. This argument may be resolved by defining the purposes of the various instruments.

The security agreement is the instrument which places the encumbrance on the debtor's property. The financing statement is to evidence an encumbrance on the real or personal property of a debtor and is filed with the county clerk and recorder where the debtor resides for the purpose of giving notice to third parties and perfecting the security interest, in compliance with the Uniform Commercial Code, section 87A-9-401, R.C.M. 1947.

The filing of notices of security agreement and notices of renewal of security agreement with the Montana Livestock Commission is in compliance with section 52-319, R.C.M. 1947, which seeks to protect livestock markets from liability for conversion arising out of the sale of livestock burdened with liens. Montana Meat Co. v. Missoula Livestock Auction Co., 125 Mont. 66, 230 P.2d 955.

The PCA perfected its security interest when it filed its financing statement on May 13, 1968, and listed "all livestock" as being the collateral for the security agreement. This instrument, duly filed in the county where the debtor resided, gave notice to third parties that PCA had a perfected lien on Braatons' cattle. PCA's failure to adequately describe the Heart bar H cattle in the notices of security agreement and the notice of renewal of security agreement would act as a bar to PCA only if the cattle were sold by a livestock market and PCA was attempting to satisfy its lien by an action against the livestock market for conversion.

Going one step further, Batey in executing the subordination agreements, had actual notice of PCA's superior lien. Such actual notice estops Batey from coming before the courts and claiming that a sale of the Heart bar H cattle defeated his security interest in the collateral. The conclusive legal effect of the subordination agreements is to subordinate Batey of any interest

in the proceeds from the sale of Heart bar H cattle, up to the amount of PCA's lien.

We find it unnecessary to discuss defendants' appeal of the district court's order dismissing the third party complaints against Fred Hall having resolved/the district court, in granting defendants' motion for summary judgment, was not presented with any genuine issue of material fact and as a matter of law defendants were entitled to judgment.

that

The judgment of the district court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices.

- 10 -