**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**PUBLIC AUCTION YARD, BILLINGS,**
**MONTANA, Defendant-Appellee.**

**No. 78–2215.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 4, 1980.

Decided Aug. 15, 1980.

Leonard Schaitman, Freddi Lipstein (argued), Washington, D. C., on brief, for plaintiff-appellant.

Charles Brown, Helena, Mont., L. Randall Bishop (argued), Crowley, Haughey, Hanson, Toole & Dietrich, Billings, Mont., on brief, for defendant-appellee.

Before SKOPIL and FARRIS, Circuit Judges, and THOMPSON,* District Judge.

BRUCE R. THOMPSON, District Judge.

In the decision below, reported as *United States v. Shaver*, 447 F.Supp. 216 (D.Mont. 1978), the District Court granted summary judgment to appellee, Public Auction Yards, Billings, Montana, and denied the cross-motion for summary judgment made by the United States. We have appellate jurisdiction (28 U.S.C. § 1291).

The action involves the interpretation and application of a Montana statute (M.C.A. § 52–319, recodified in 1979 as M.C.A. § 81–8–301)[1] to a loan by a federal agency secured by an executed security agreement in conformity with the Uniform Commercial Code as adopted in Montana.

The loan was made by the Farmer's Home Administration in 1969. The security agreement was recorded by the federal agency with the county recorder on November 18, 1969, and with the general recorder of marks and brands on November 26, 1969. On December 3, 1969, a cow encumbered by the security agreement was sold by the Public Auction Yards in Billings for $135.73. The notice filed with the general recorder of marks and brands was not listed with the Billings office of the Montana Livestock Commission until December 5, 1969. In 1975 the United States brought this action for conversion of the cow.

One of the principle problems which caused concern to the lower court, that is, whether the rights of the United States are governed by the federal or state law, and to what extent, has been solved by the intervening decision of the Supreme Court in *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979). The opening paragraph of the opinion by Mr. Justice Marshall succinctly states the issues and the Court's conclusions.[2]

---

* The Honorable Bruce R. Thompson, United States District Judge, District of Nevada, sitting by designation.

1. The general recorder of marks and brands of the state of Montana shall accept and file in the office of the general recorder of marks and brands, notices of chattel mortgages, renewals, assignments and satisfactions thereof, upon the livestock owned by any person, firm, corporation, or association, and bearing his, their, or its recorded brand, and shall list such notices on the official records of marks and brands kept by him, *and also shall cause to be listed said notices in the offices of the stock inspectors, employed by the livestock commission and stationed at the several central livestock markets where records are kept of marks and brands.* All forms on which such notices shall be given shall be prescribed by the livestock commission and shall be furnished by the mortgagee of livestock, who shall give such notice. No livestock market to which livestock is shipped shall be liable to any mortgagee for the proceeds of livestock sold through such livestock market by the mortgagor unless notice of such mortgage *is filed* as hereinabove provided. (Emphasis added.)

2. We granted certiorari in these cases to determine whether contractual liens arising from certain federal loan programs take precedence over private liens, in the absence of a federal statute setting priorities. To resolve this question, we must decide first whether federal or state law governs the controversies; and second, if federal law applies, whether this Court should fashion a uniform priority rule or incorporate state commercial law. We conclude that the source of law is federal, but that a national rule is unnecessary to protect the federal interests underlying the loan programs. Accordingly, we adopt state law as the appropriate federal rule for establishing the relative priority of these competing federal and private liens.

The *Kimbell Foods* cases (consolidated appeals from two lower court judgments) involved two quite different factual situations. The first presented a contest between future advances made to Kimbell under 1968 security agreements and a 1969 SBA guaranteed loan. In the second case, the priority conflict was between a Farmer's Home Administration's contractual security interest in a tractor and a subsequent repairman's statutory lien on the equipment. In neither of these two situations had the federal statutes prescribed priorities. In both situations the High Court rejected government arguments that effective administration of federal loan programs requires uniform federal rules of priority and the Court declined "to override intricate state laws of general applicability on which private creditors base their daily commercial transactions" (440 U.S. at 729, 99 S.Ct. at 1459). Thus, in the first situation (*supra*) the *Kimbell Foods* court affirmed the application of state law to accord priority to the future advances under the first security transaction; and in the second situation (*supra*) the Court remanded the action to the District Court for a determination of how state law would affect the alleged priority of the repairman's lien.

*Kimbell Foods* established that while federal law governs these secured transactions, the content of the federal rule is determined by reference to non-discriminatory state law. In the light of *Kimbell Foods*, the only issue for appellate decision in this case is whether the District Court correctly interpreted and applied Montana law. *See, United States v. Friends' Stockyard, Inc.*, 600 F.2d 9 (4th Cir. 1979).

The correctness of the result reached in this case seems beyond cavil. The Montana statute (Footnote 1, supra) explicitly insulates a livestock auction yard from liability for conversion if the security agreements have not been filed and listed as required. Under an earlier version of this statute, the Montana Supreme Court (*Montana Meat Co. v. Missoula Livestock Auction Co.*, 125 Mont. 66, 230 P.2d 955 (1951)) held that despite the fact that the auction yard had actual notice of the mortgage, failure of the mortgagee to record as required by the statute precluded liability for conversion, and said:

"Nor is there a deprivation of property without due process of law. The mortgagee still has the chattel mortgage and a right of action against the mortgagor. The only additional requirement is that if a chattel mortgagee wants to hold a livestock market to a common-law rule of agency law, one that is admittedly harsh under the present economic conditions, he must in addition to filing his chattel mortgage in the office of the county clerk and recorder as he has heretofore done, file it in the office of the general recorder of marks and brands of the state. This he failed to do. The livestock market is not given complete immunity as asserted by the plaintiff. Chapter 36, Laws of 1949, merely provides that if the notice given is not in strict conformity with the recording statute the livestock market is not liable to the mortgagee for conversion."

More recently in *Batey Land & Livestock Co. v. Nixon*, 172 Mont. 99, 560 P.2d 1334 (1977), the viability of this principle was recognized (by dictum) when the Court observed:

"The PCA perfected its security interest when it filed its financing statement on May 13, 1968, and listed 'all livestock' as being the collateral for the security agreement. This instrument, duly filed in the county where the debtor resided, gave notice to third parties that PCA had a perfected lien on Braatons' cattle. PCA's failure to adequately describe the Heart bar H cattle in the notices of security agreement and the notice of renewal of security agreement *would act as a bar to PCA only if the cattle were sold by a livestock market and PCA was attempting to satisfy its lien by an action against the livestock market for conversion.*"

(Emphasis supplied).

The government argues that it did all the Montana statute required it to do when it

recorded its security agreement with the county recorder and with the general recorder of marks and brands. This is true. The problem arose because of the temporal hiatus between the recording with the general recorder of marks and brands and the latter official's listing of the notice with the Billings office of the Montana Livestock Commission. Despite this official delay, the Montana statute prevents holding a livestock auction yard liable for conversion in the absence of a listing with, in this instance, the local Billings office. The consequence of this statute and of possible delays fall equally and non-discriminatorily on all creditors, private citizens, financial institutions and federal loaning agencies alike. Again, to quote *Kimbell Foods* (440 U.S. 740, 99 S.Ct. at 1465): "Accordingly, we hold that absent a Congressional directive, the relative priority of private liens and consensual liens arising from these Government lending programs is to be determined under *nondiscriminatory* state laws." (Emphasis added).

Affirmed.