O'CONNELL RANCH COMPANY, A CORPORATION, PLAINTIFF AND APPELLANT, *v.* GREAT FALLS LIVESTOCK COMMISSION COMPANY, DEFENDANT AND RESPONDENT.

No. 9765.

Submitted January 14, 1959. Decided September 3, 1959.

343 Pac. (2d) 703

See **C. J. S.** Factors § 49.

Ralph J. Anderson, Stanley P. Sorenson, Helena, for appellant. Ralph J. Anderson, argued orally.

Jardine, Stephenson, Blewett & Weaver, Great Falls, for respondent. A. S. Jardine, Great Falls, argued orally.

MR. JUSTICE ADAIR:

This is an appeal by the plaintiff, O'Connell Ranch Company, a corporation, from a judgment entered on a jury's verdict.

*The Facts:* During the week of the 1954 Northern Montana state fair at Great Falls, Montana, teenage Brian Thomas O'Connell, hereinafter called Tom O'Connell, there met Mr.

Ralph King, the president and manager of the defendant, Great Falls Livestock Commission Company, at which time Tom informed Mr. King that he and his brother had a couple hundred head of cattle which they desired to sell prior to leaving for school that fall.

On that occasion Tom O'Connell also discussed with Mr. King the market conditions and indicated that the cattle would be shipped to the Great Falls Livestock Commission Company for sale.

Later on that same day, Mr. King met Brian D. O'Connell, hereinafter called Brian O'Connell, and informed Brian that his son Tom had discussed with Mr. King the selling of a couple hundred head of cattle.

Brian D. O'Connell, who then was and now is the president and general manager of the plaintiff, O'Connell Ranch Company, when informed by Mr. King of his above conversation with Tom O'Connell, became quite concerned and upset and informed Mr. King that Tom O'Connell did not own any cattle which he could sell and that he did not even own a cattle brand. Brian also informed Mr. King that the cattle in question were all contracted for fall sale and delivery.

About one week later Tom O'Connell proceeded to a ranch of the O'Connell Ranch Company, situate near Gold Creek, Powell County, Montana, and there informed the foreman of such ranch that it was the desire of his father Brian D. O'Connell to ship approximately 200 head of cattle from Gold Creek to the Wolf Creek ranch of the O'Connell Ranch Company, situate near Wolf Creek, Lewis and Clark County, Montana. The foreman of the Gold Creek ranch complied with the directions so given him by Tom O'Connell, assuming that they were the orders of Brian D. O'Connell being relayed to the foreman through Brian's son, Tom O'Connell. As a result approximately 185 head of O'Connell Ranch Company's cattle were loaded on the cars of the Northern Pacific Railway at Gold Creek, Montana, and shipped from there by rail under a bill

of lading made out by the railway's agent at Garrison, Montana, there being no railway station at Gold Creek.

At Garrison, the ranch foreman was informed that a bill of lading had already been made out for these same cattle covering their transportation from Gold Creek, Montana, to the Great Falls Livestock Commission Company at Great Falls, Montana, and believing such bill of lading to be in error, the ranch foreman, while at Garrison, had the railway agent change the destination of the shipment to Wolf Creek, Montana, instead of to Great Falls. From that time on, the foreman of the Gold Creek ranch had nothing further to do with the cattle so loaded and shipped.

While the cattle were en route, and while passing through Helena, Montana, the destination of the shipment was changed from Wolf Creek, Montana, to the Great Falls Livestock Commission Company at Great Falls, Montana. Such diversion was accomplished by a telephone call from some unidentified person to the railway company.

On August 16, 1954, the cattle arrived at the stockyards of the Great Falls Livestock Commission Company in Great Falls, Montana, where they were checked in, graded and inspected by the brand inspector.

Prior to the arrival of the cattle in Great Falls, Tom O'Connell by telephone informed Mr. King, the president of the Great Falls Livestock Commission Company that he, Tom, was shipping the cattle. During such telephone conversation, Mr. King inquired what Tom's father, Brian O'Connell, had said about such shipment and, according to Mr. King, Tom O'Connell answered "It is all right with him."

After the cattle arrived at the defendant Commission Company's stockyards, Tom O'Connell again telephoned the defendant company and gave defendant directions as to how the cattle should be sold. On the following day, August 17, 1954, the cattle were sold pursuant to such telephone directions and the check for the proceeds of the sale was delivered to Tom O'Connell. This check was made out to the order of "Byron [sic]

O'Connell'' and, due to the oversight and inadvertence of the defendant Commission Company, the Montana Livestock Production Credit Ass'n, which held the mortgage on the O'Connell Ranch Company cattle, was not named as a payee on the check.

Tom O'Connell accepted the check which was for the sum of $26,438.01 and presented same to a bank in Helena, Montana, where he attempted to cash it but in this he was unsuccessful. The mortgagee, Montana Livestock Production Credit Ass'n, thereafter learned of the existence of the check and promptly caused payment to be stopped thereon. The defendant Commission Company regained possession of the check and then issued a new check in the same amount payable to the plaintiff, O'Connell Ranch Company and to the mortgagee, the Montana Livestock Production Credit Ass'n which latter check was subsequently endorsed by both payees, cashed and paid.

The cattle so sold on August 17, 1954, had previously been contracted for sale by the plaintiff corporation at 18½ cents per pound with date of delivery set between the 5th and 10th of October 1954.

The instant action was brought by the plaintiff, O'Connell Ranch Company, to recover for loss and damage resulting to it by reason of the wrongful sale of 173 head of its cattle.

The alleged wrongful sale of the 173 head of the Company's cattle constituted the first cause of action in the complaint.

The second and third causes of action concerned sales by the defendant Commission Company of certain cattle belonging to one Corrigan and one Osborn. These were cattle owned by certain employees of the O'Connell Ranch Company which likewise had been contracted for October 1954 sale and delivery but which had been rounded up and shipped to Great Falls and there sold on August 17, 1954, with the O'Connell Ranch Company cattle. The resulting causes of action arising to these employees of the plaintiff from such alleged wrongful sales had been duly assigned to the O'Connell Ranch Company.

28

The issues are essentially the same in each cause of action, hence our consideration of the issues raised by the first cause of action will suffice for the remaining causes.

Plaintiff alleged that the defendant, the Great Falls Livestock Commission Company, without authority from the plaintiff, or any one authorized to act in plaintiff's behalf, sold 173 head of plaintiff's cattle and that as a result of such unauthorized sale plaintiff was damaged as follows:

First, that in order to fulfill its contract, calling for delivery and sale between the 5th and 10th days of October 1954, the plaintiff was forced to replace such cattle on or about the 1st day of October 1954, and that due to the increase in market value of cattle between the date of the unauthorized sale and the date of the replacement of said cattle the plaintiff was damaged in the sum of $350.

Second, that under the plaintiff's contract for sale and delivery in October 1954, plaintiff was to have received the sum of 18½ cents per pound for the cattle, while at the unauthorized and wrongful sale of the cattle the price received was but the sum of 18 cents per pound; whereby plaintiff suffered a loss of one half cent per pound per animal totaling the sum of $732.48 and that in addition to such loss the defendant deducted its commissions, feed charges, brand inspection and national livestock and meat board fees from the total sale price received at the unauthorized sale of the cattle, which unauthorized deductions amounted to the additional sum of $583.78 to plaintiff's further loss and damage in that amount.

The complaint further alleged that were it not for the unauthorized sale, the cattle would have been on feed from and after the date of the wrongful sale, August 17, 1954, until the October delivery date provided in plaintiff's contract calling for October sale and delivery and that had the cattle been allowed to continue on such feed they would have gained an average of two pounds per animal per day during such period and that as a direct result of such unauthorized wrongful sale

the plaintiff suffered further loss and damage in the sum of
$3,520.55.

In the answer to the above allegations of plaintiff's complaint
the defendant, Great Falls Livestock Commission Company,
alleged that all of the cattle of the plaintiff were sold by the
defendant on August 17, 1954, at the full market value thereof
and that the proceeds of the sale of the cattle (less the freight
charged, charges for feed of the cattle, defendant's commis-
sion on the sale thereof and brand inspection fees, fees for
the National Livestock and Meat Board), were paid to the
plaintiff O'Connell Ranch Company and to the Montana Pro-
duction Credit Ass'n which held a mortgage on plaintiff's cat-
tle.

The defendant admitted that plaintiff replaced the cattle
which the defendant had sold and alleged that at the sale, plain-
tiff received slightly in excess of 18.04 cents per pound for
the cattle sold. Defendant further alleged that 20 head of said
cattle were not of sufficient grade or quality to obtain the
full price for which plaintiff had contracted to sell the cattle
and alleged the fees deducted by defendant were reasonable
and that defendant was entitled to deduct the same from the
sale price of the cattle. Defendant further specifically denied
that the sale was wrongful.

In a first separate defense the defendant alleged that the
cattle were consigned to it for sale and that at the request of
the owners thereof, defendant sold the cattle for their full mar-
ket value.

In a second separate defense the defendant alleged that it
was a commission merchant operating under the Packers and
Stockyards Act of 1921, as amended, 7 U.S.C.A. section 181
et seq.; that as such commission merchant the defendant was
required to receive and sell without discrimination all livestock
consigned and shipped to it for sale; that, believing it was au-
thorized to sell the cattle, defendant sold the same for the full
market value thereof and paid to the owners and the mortgagee
of the cattle sold the full market value therefor.

Defendant further alleged that plaintiff could have replaced the cattle sold by it without loss to the plaintiff; that the defendant had sold cattle which had been consigned to defendant in accordance with common practice and usage under such circumstances; and that the plaintiff had received the full market value for the cattle sold.

In its reply to defendant's answer the plaintiff specifically denied that at any of the` times mentioned in the pleadings, Tom O'Connell was the authorized agent of the plaintiff and affirmatively alleged that Tom O'Connell was not the authorized agent of the plaintiff at any of said times and that the defendant well knew or, in the exercise of reasonable diligence, should have known of such lack of authority.

Throughout this cause, plaintiff maintained that the defendant wrongfully and without authority sold plaintiff's cattle. The defendant on the contrary maintained that it sold under authorization from plaintiff and with plaintiff's consent and at plaintiff's request.

The only instructions given by the trial court that pertain to defendant's authority to sell plaintiff's cattle were the court's instructions Nos. 1, 4-A, and 4-B, which read:

*Court's Instruction No. 1.* "In this action the plaintiff O'Connell Ranch Co. seeks to recover damages which it alleges it suffered as a direct and proximate result of a sale by the defendant of 173 head of cattle, the property of the plaintiff, and damages which it alleges one Leo Osborn suffered by reason and as a direct and proximate result of the sale by the defendant of 6 head of cattle belonging to said Leo Osborn and damages which it alleges were suffered by one E. T. Corrigan as the proximate result of the sale by the defendant of 1 steer belonging to the said E. T. Corrigan alleging further that the claims, if any, of the said Leo Osborn and E. T. Corrigan have been assigned to the plaintiff.

"If you find from a preponderance of all the evidence and in accordance with these instructions that the sale by the de-

fendant Great Falls Livestock Commission Co. of the said 173 head of cattle owned by the plaintiff was unauthorized by the plaintiff, or any one acting on its behalf with authority, either actual or ostensible as elsewhere defined in these instructions, so to do, then you must return a verdict for the plaintiff and you must determine by a preponderance of all the evidence and in accordance with these instructions the damages suffered by the plaintiff as a result of such unauthorized sale. If you further find that the sale by the defendant of the six head of cattle owned by the said Leo Osborn and the 1 steer owned by the said E. T. Corrigan was unauthorized by the said Leo Osborn and/or E. T. Corrigan, or by any one acting in their behalf with authority, either actual or ostensible, so to do and if you further find from a preponderance of all the evidence that the said Leo Osborn and/or E. T. Corrigan have assigned any claim or claims which they might have against the defendant by reason of such unauthorized sale to the plaintiff herein then you must also determine the damages suffered by the said Leo Osborn and/or E. T. Corrigan as a result of such unauthorized sale and include such amount, or amounts, in your verdict for the plaintiff.''

*Court's Instruction No. 4-A.* ''You are instructed that if you find from a preponderance of all of the evidence in this case that the defendant herein had actual notice that Brian Thomas O'Connell was not the owner of or did not have authority to sell the cattle here involved, then your verdict must be for the plaintiff and the damages should be fixed in accordance with the instructions elsewhere given, in such sum as you find from a preponderance of the evidence that the plaintiff suffered.''

*Court's Instruction No. 4-B.* ''You are instructed that under the law the defendant must sell cattle consigned to it unless it knows or has been put on notice that it has no authority to sell the same. Unless you find from a preponderance of the evidence that defendant knew that it had no authority to sell

the cattle of Plaintiff consigned to it by the son of Plaintiff, then you must return your verdict for the defendant.''

On this appeal the plaintiff, O'Connell Ranch Company has assigned twenty-six separate specifications of error.

Specifications No. 5 to 16, both inclusive, assign as error the trial court's refusal to give plaintiff's proposed Instructions Nos. 2, 3, 4, 5, 6, 7, 8, 9, 10, 10-A, 11 and 12, dealing with the question of agency.

Plaintiff's proposed Instruction No. 2, so refused by the trial court, reads: ''You are instructed that an agent is one who represents another called the principal in dealings with third persons. Such representation is called agency. An agency is either actual or ostensible. An agency is actual when the agent is really employed by the principal. An agency is ostensible when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him. In this cause the defendant has alleged, in answer to the plaintiff's complaint, that it was directed to sell the cattle here involved by one Brian T. O'Connell. If you find from a preponderance of all of the evidence that defendant was directed to sell said cattle by the said Brian T. O'Connell then you are instructed that in order for that fact to constitute a defense to this action said Brian T. O'Connell must have been acting as an agent, either actual or ostensible, for the plaintiff O'Connell Ranch Co., Inc., and in this connection you are further instructed that to constitute the said Brian T. O'Connell, the ostensible agent of the plaintiff, the plaintiff must by reason of some act or want of ordinary care on its part have led the defendant to believe that said Brian T. O'Connell was its agent.''

To the giving of the above-proposed instruction, defendant's counsel made the following objection, viz.:

''To the giving of Plaintiff's Proposed Instruction No. 2, and all of the other instructions that follow pertaining to agency, Defendant objects on the grounds and for the reasons

that there is no evidence in this case whatsoever on the question of agency. There was no proof offered by the plaintiff and there was no proof offered by the defendant as to any agency, nor was there any issue of agency involved as far as the proof is concerned.''

The trial court sustained defendant's objections and refused plaintiff's proposed Instruction No. 2. Such court also refused plaintiff's proposed Instructions Nos. 3, 4, 5, 6, 7, 8, 9, 10, 10-A, 11 and 12, each and all dealing with the question of agency. These proposed instructions so refused are in the files of the clerk of the district court and in the transcript on appeal filed in the office of the clerk of the supreme court on this appeal hence, we shall not further incumber the record by recopying them in this opinion.

Under the pleadings herein and the proof offered in support thereof at the trial, we deem the trial court's instructions on the question of agency, and defendant's claimed authority for the selling of the cattle, inadequate and are of the opinion that it was prejudicial error for the trial court to sustain defendant's objections to plaintiff's offered Instructions Nos. 2, 3, 4, 5, 6, 7, 8, 9, 10, 10-A, 11 and 12, and to refuse to give same. In our opinion, such designated offered instructions correctly state the law on the question of agency upon which this case is founded. We do not hold that all of the offered instructions on agency should have been given, but the trial court should have given one or more proper and adequate instructions on the law of agency as to the authority to represent the plaintiff corporation.

The defendant urges that this is a suit for conversion, but we do not so view it.

The real question was whether or not the defendant, Great Falls Livestock Commission Company, had the right to sell plaintiff's cattle which had been consigned to defendant's stockyards. If defendant had that right, plaintiff has no cause of action against it. On the other hand if defendant did not

34

have such right and plaintiff is shown to have suffered loss by an unauthorized sale of its cattle, then plaintiff is entitled to redress and to have its entire case, together with the law applicable thereto presented to the jury for its consideration. Plaintiff introduced evidence tending to show that no person with any authority from the O'Connell Ranch Company had ever authorized the defendant to sell the cattle, while the defendant alleged that the sale was with the consent of the O'Connell Ranch Company.

Next, and alternatively, the defendant alleged that even if ▆ the sale was without the consent of the owner, the O'Connell Ranch Company, that by reason of the fact that defendant is incorporated under the provisions of the Packers and Stockyards Act that defendant was free from any liability for loss or damage resulting to plaintiff through an unauthorized sale for the reason that as a selling agent defendant was immune from liability. It is thus quite apparent that agency became and was a fact of prime importance in this case.

What the defendant strongly relies upon to free it from liability is its defense of immunity under the Packers and Stockyards Act. Defendant here contends that the holding of this court in Montana Meat Co. of Helena v. Missoula Livestock Auction Co., 125 Mont. 66, 73, 230 Pac. (2d) 955, grants the defendant, as a stockyard, immunity from liability for any sales it might make. We do not so read that opinion and direct attention to the express statement in the court's opinion in that case to the effect that "The livestock market is not given complete immunity as asserted by the plaintiff."

The Montana Meat Company case, supra, involved a sale by a stockyard company of cattle which had been mortgaged. In that case, however, the mortgagee had neglected to record his mortgage with the general recorder of marks and brands as required by statute in order to hold the stockyard liable for conversion. The case discusses the general liability of stockyards under the Packers and Stockyards Act and examines

both the majority and minority view of the courts concerning the liability of stockyards for conversion arising out of sales made by such stockyards. The Montana Meat Company case is readily distinguishable from the instant cause wherein the stockyard had actual notice of the shipper's lack of authority to sell the cattle. In fact, the defendant's brief on this appeal concedes that its liability depends upon whether or not the defendant knew or had been put on notice that it had no authority to sell the cattle. Here again we return to the issue of agency.

Tom O'Connell's authority or lack of authority was and is a most vital issue in this cause. It was essential that the jury be instructed as to the legal effect of the authority or lack of authority of Tom O'Connell. The question as to whether or not the defendant, Great Falls Livestock Commission, had been put on notice of this lack of authority in Tom O'Connell to order the sale of these cattle is likewise a vital issue in this cause, and the jury were entitled to be informed of the legal effect of this notice or lack of notice to the defendant.

The court's Instruction No. 1, supra, in effect, told the jurors that they would be instructed later as to the meaning of certain terms but in no subsequent instruction were such terms defined.

Although the defendant admits that it never attempted to offer any proof in support of its pleading of the defense that the sale was authorized by the O'Connell Ranch Company and that the cattle were shipped by the O'Connell Ranch Company with plaintiff's consent and approval, still the issue of agency is vitally important under such defense, and its claim of absolute immunity by reason of the fact that it is organized and operated under the provisions of the Packers and Stockyards Act. As we have pointed out, under the law of this state, the Act relied upon does not grant an absolute immunity to the stockyards from any liability for a wrongful sale. We must still determine the question of whether or not the

defendant knew or had been put on notice that it had no authority to sell the cattle. This question could not be determined in this case without the proper instructions to the jury concerning the agency or lack of agency of Tom O'Connell. Nor do we believe that defendant's claim that plaintiff suffered no loss or damage disposes of this case.

Plaintiff claims it suffered loss and damage in the value of the additional weight its cattle would have gained had they been kept and grazed until October, while the defendant sought to establish by its evidence that although the cattle would have gained in weight had they been kept until October yet such gain would have been much less than was claimed by plaintiff. Clearly the amount of this loss and damage was a question to be resolved by the jury. There are other offsets and claims advanced by defendant but these likewise are to be resolved by the jury under proper instructions from the court.

For the reasons stated the judgment of the district court must be and it is reversed and the cause remanded to the district court for a new trial and further proceedings not inconsistent with this opinion.

MR. JUSTICES BOTTOMLY and ANGSTMAN, concur.

THE HONORABLE GEORGE J. ALLEN:

The lower court gave plaintiff's Offered Instruction No. 1 without objection, reading in part as follows:

"If you find from a preponderance of all the evidence and in accordance with these instructions that the sale by the defendant Great Falls Livestock Commission Co. of the said 173 head of cattle owned by the plaintiff was unauthorized by the plaintiff, or anyone acting on its behalf with authority, either actual or ostensible as elsewhere defined in these instructions so to do, then you must return a verdict for the plaintiff and you must determine by a preponderance of all the evidence and in accordance with these instructions the damages suffered by the plaintiff as a result of such unauthorized sale."

The instructions of the court are the law of the case and must be followed by the jury whether correct or incorrect.

While I agree with the view of Mr. Justice Castles in his dissent, that no question of agency should be involved, the lower court having injected the question of agency into the instructions in the case, it then became incumbent upon the court to follow through with proper definitions to guide the jury in its application of the instruction given. This the court did not do.

Therefore, I concur in the result reached by the majority opinion, but for the reason herein given.

MR. JUSTICE CASTLES: (dissenting).

I dissent. The majority opinion hardly recognizes some of the pertinent facts from the record, but no good will be served by an attempt to recite them correctly here because even under the recitation of the majority opinion, the verdict of the jury and judgment should be affirmed.

No question of the agency of Brian T. O'Connell as agent of the O'Connell Ranch Company is involved in the case at all. The case is one of conversion if it is anything. The instructions referred to in the majority opinion have nothing to do with the issues and were properly rejected.

Montana Meat Company of Helena v. Missoula Livestock Auction Co., 125 Mont. 66, 230 Pac. (2d) 955, is controlling in the case, and the jury was properly instructed without objection as to that issue in the two instructions which were as follows:

*Court's Instruction 4-B.* "You are instructed that under the law the defendant must sell cattle consigned to it unless it knows or has been put on notice that it has no authority to sell the same. Unless you find from a preponderance of the evidence that defendant knew that it had no authority to sell the cattle of Plaintiff consigned to it by the son of Plaintiff, then you must return your verdict for the defendant."

*Court's Instruction No. 4-A.* "You are instructed that if you find from a preponderance of all of the evidence in this case that the defendant herein had actual notice that Brian Thomas O'Connell was not the owner of or did not have authority to sell the cattle here involved, then your verdict must be for the plaintiff and the damages should be fixed in accordance with the instructions elsewhere given, in such sum as you find from a preponderance of the evidence that the plaintiff suffered."

Seventeen year old son Tom gave orders to the plaintiff's ranch foreman, the Railway Company, and the defendant, each of them following the orders. The jury heard all the evidence and under the previously quoted instructions chose to believe the evidence of the defendant.

A second reason is apparent why the judgment should be affirmed. Under the proper instructions, as given, the jury might well have found *no damages* sustained by plaintiff; it received full market value for the cattle; and it received a higher price than its contract price for cattle covered by the contract. The majority opinion ignores this fact by using an average price, covering contract cattle and inferior cattle included in the shipment. It further appears that plaintiff's foreman authorized the shipment, and the defendant was required by law as consignee to receive *and* feed the cattle. The defendant cannot be charged with this expense as damages under any theory.

The writer has briefly indicated, without going into detail, the two grounds on which the jury verdict and judgment should be affirmed and dissents from the view of the majority that any questions of agency instructions are or should be involved.