**UNITED STATES of America, Plaintiff,**

**v.**

**Boyd SHAVER, Public Auction Yard, Billings, Montana, Elvy M. Woods and Mrs. Elvy M. Woods, Defendants.**

**No. CV–75–86–BLG.**

United States District Court,
D. Montana,
Billings Division.

Feb. 15, 1978.

Roy E. Murray, Jr., Asst. U. S. Atty., D. of Mont., Butte, Mont., for plaintiff.

H. Elwood English, Crowley, Haughey, Hanson, Toole & Dietrich, Billings, Mont., for defendants.

## OPINION AND ORDER

BATTIN, District Judge.

The United States filed a complaint seeking recovery of damages from the named defendants for conversion of cattle mortgaged to the Farmers Home Administration. The action was settled and dismissed with prejudice as to defendants Elvy M. Woods, Mrs. Elvy M. Woods, and Boyd Shaver. Only Count V of the complaint remains viable. That count charges that the Public Auction Yard wrongfully purchased from Larry E. Flanagan (the Mortgagor) one cow mortgaged to the plaintiff, for the sum of $135.73, thus diminishing plaintiff's mortgage by that amount.

The parties have filed cross-motions for summary judgment, supported by briefs. The facts are undisputed with respect to the allegations of Count V of the complaint.

The United States Government had security interests in cattle owned by Larry E. Flanagan. The security interests, stemming from chattel mortgages, were properly filed with the State Brand Office in late November 1969. The Security Agreement itself was executed on November 18, 1969. On December 3, 1969, Flanagan sold one of the cows covered by the security interest through the Public Auction Yard in Billings. On December 5, 1969, the security agreement filed in the State Brand Office in Helena had been transmitted to and was received in the Billings office of the Montana Livestock Commission.

Montana has a statute which sets forth the procedure for perfecting livestock security agreements. Section 52–319, R.C.M. 1947, provides:

> "The department of livestock shall accept and file notices of security agreement . . . covering livestock owned by a person . . . and bearing his recorded brand, and shall list the notices on the official records of marks and brands kept by it. The department *shall also list the*

*notices in the offices of the stock inspectors, employed by the department of livestock and stationed at the central livestock markets where records are kept of marks and brands.* All forms on which the notices are given shall be prescribed by the department of livestock and furnished by the secured party, who gives notice. *A livestock market to which livestock is shipped may not be held liable to any secured party for the proceeds of livestock sold through the livestock market by the debtor unless notice of the security agreement is filed as hereinbefore provided.*" (Emphasis added.)

If Montana law controls on the facts of this case, the interpretation given this statute will be dispositive of the motions for summary judgment.

The United States urges that federal common law, and not state law, controls the disposition of this case. The principal argument put forth by the plaintiff concerning the applicability of federal common law stems from a decision rendered by Judge Jameson of this Court. In the case of *United States v. Sig Ellingson & Co.,* 164 F.Supp. 7 (D.Mont.1958), an issue similar to that raised here was summarily dismissed because the Court found the question was preempted by federal common law. Judge Jameson noted:

"Whether the applicable Montana recording statutes [the statute under consideration was § 52–319, prior to its present amendments] were complied with (defendant's grounds 2 and 3) is immaterial. Under the authority of *United States v. Matthews,* 9 Cir. 1957, 244 F.2d 626, the federal common law is controlling on the question of whether there is a conversion of property subject to a chattel mortgage in favor of the United States securing an FHA loan, sold through the agency of a livestock company." *United States v. Sig Ellingson & Co., supra* at 8.

The facts in *Sig Ellingson* are similar to the facts in this case. There the FmHA had a note secured by a chattel mortgage in Wyoming. The security interest was duly recorded in the State of Wyoming. The

mortgagor moved the cattle to Montana and sold them through the defendant's stockyard.

In deciding the case, the Court relied on the Ninth Circuit case of the *United States v. Matthews,* 244 F.2d 626 (9th Cir. 1957), which held "that Federal common law governs the rights and liabilities of the parties." *United States v. Matthews, supra* at 628. The *Matthews* case is factually apposite, with one exception, to the facts of this case.

In *Matthews,* a person named Wheaton executed a crop and chattel mortgage to the FmHA on certain livestock. The mortgage was duly perfected by recording it in conformance with California law. Subsequently, without the knowledge or consent of the mortgagee, Wheaton moved the cattle to a different county and delivered them to Matthews for sale. Matthews relied on Wheaton's representations that the cattle were free and clear of any adverse security interest. On these facts, the Ninth Circuit found that Matthews should be held liable for the reasonable market value of the livestock "even though the appellees had no knowledge of the appellant's chattel mortgage on such livestock." *United States v. Matthews, supra* at 631. In reaching its decision on the remedy to be applied, the Circuit held that the federal common law controlled. *United States v. Matthews, supra* at 628. The crucial factual distinction between *Matthews, Sig Ellingson,* and the present case is that in *Matthews,* and ostensibly in *Sig Ellingson,* the FmHA had *perfected* its security interest by complying with the local recording statutes. This factual distinction raises the question of whether or not plaintiff's reading of *Sig Ellingson,* and *Matthews,* is correct.

The plaintiff reads both cases too broadly. Plaintiff argues that *Sig Ellingson* can be read to say that whether a security interest is recorded or not is of no consequence because federal law controls. However, when the case is examined closely, implicit in the Court's determination is the recognition that Judge Jameson was speaking of the law controlling the remedy avail-

able to the plaintiff, not the law by which the security interest is perfected in the first instance. The same analysis is applicable to *Matthews.*

The *Matthews* case can be further distinguished from the case at hand. The decision, *United States v. Matthews,* was based upon *Clearfield Trust Company v. United States,* 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943). In *Clearfield,* the Supreme Court held federal common law to be applicable in determining the liability of an endorser of a government check who had guaranteed all prior endorsements in accordance with the requirements of Treasury regulations. The Court noted in *Clearfield* that the authority to issue the check was not dependent in any way upon the laws of any state. *Clearfield v. United States, supra* at 366, 63 S.Ct. 573. Such is not the case here. The security interest is directly dependent upon Montana state law for the creation of the perfected security interest. Furthermore, in *Matthews,* a contractual right to repossession was involved and the parties agreed in the litigation that federal law applied. *United States v. Sommerville,* 324 F.2d 712, 720 (3rd Cir. 1964, D. J. Steel, concurring). Neither factor exists here.

Although it is commonly accepted that "the Courts are divided as to whether the state or federal law" applies in cases such as this, *United States v. Union Livestock Sales Company,* 298 F.2d 755 (4th Cir. 1962), a review of the Ninth Circuit decisions post-*Matthews* reveals that the controversy relates only to the remedy applied, not the creation of the right sought to be protected.

In the case of *United States v. View Crest Garden Apartments, Inc.,* 268 F.2d 380 (9th Cir. 1959), the Circuit reasoned that there was no apparent interest by Congress in incorporating by reference certain duties under state law tending to restrict the United States to the state remedies for breach of those duties. *United States v. View Crest Garden Apartments, Inc., supra* at 382. *View Crest* was an action to foreclose an FHA mortgage and to appoint a receiver. In noting that the FHA uses different mortgage forms for different states,

the Court found an intent to conform to local law. *View Crest, supra* at 382. It explained in language crucial to this case:

"Thus state recording acts interfere with no federal policy as there is no federal recording system for the type of mortgages here involved. It is commercially convenient to adopt existing state systems as it saves the expense of setting up a whole new federal recording system and it enables persons checking ownership interests in property to refer to one set of record books rather than two." *United States v. View Crest Apts., Inc., supra* at 383.

Here there has been no showing by the plaintiff that there is a federal system for recording security interests in chattel mortgages. If such a system exists, it is manifestly apparent that the record does not show the system has been complied with. Further, it would seem that here, as in *View Crest,* the United States' attempt to comply with the Montana recording statute, § 52–319, reflects an intention to conform to local law. In cases such as this, the Court must look to federal law to find the appropriate remedy but to state law in determining the creation of the right sought to be enforced. Cases which comport with the recognition that state law is looked to for the creation of a valid security interest include the following: *United States v. MacKenzie,* 510 F.2d 39, 42 (9th Cir. en banc 1975); *United States v. Giragossiantz,* 488 F.2d 358, 360 (9th Cir. 1970); *United States v. Stadium Apartments, Inc.,* 425 F.2d 358, 363 (9th Cir. 1970); *Bumb v. United States,* 276 F.2d 729, 737 (9th Cir. 1960); *Cassidy Commission Company v. United States,* 387 F.2d 875, 879 (10th Cir. 1967); *see generally,* *Hammer v. Chapin,* 256 F.Supp. 818 (D.Mont.1966).

Having concluded that federal law controls only with respect to the remedy available to plaintiff here, it is necessary to look to Montana case law to determine whether a valid security interest exists in the first instance.

There are two Montana cases which touch on the meaning of § 52–319, R.C.M., 1947.

In *Montana Meat Co. v. Missoula Livestock Auction Co.*, 125 Mont. 66, 230 P.2d 955 (1951), the plaintiff sold twenty cows to a rancher. A note taken in partial payment for the sale was secured by a chattel mortgage duly filed with the County Clerk and Recorder. At the time the chattel mortgage was filed in *Montana Meat Co.*, the recording statute required two steps. First, the mortgage had to be filed locally with the Clerk and Recorder of the county in which the particular livestock were located. Secondly, the mortgage had to be filed with the state recorder of marks and brands. In *Montana Meat Co.*, the plaintiff did not meet its two-fold burden under § 52–319, R.C.M., 1947; only the local filing requirement was satisfied. Subsequent to plaintiff's local filing in *Montana Meat Co.*, the defendant sold mortgaged calves without the knowledge or consent of the mortgagee.

The principal issue the Court addressed in the *Montana Meat Co.* case was whether the plaintiff was required to satisfy both steps set forth in § 52–319. The Court held in favor of the defendant, noting

"The only additional requirement is that if a chattel mortgagee wants to hold a livestock market to a common-law rule of agency law . . . he must in addition to filing his mortgage in the office of the county clerk and recorder as he has heretofore done, file it in the office of the general recorder of marks and brands of the state." *Montana Meat Co. v. Missoula Livestock Auction Co.*, *supra* at 73, 230 P.2d at 959.

The crucial language of the case so far as the present action is concerned is the observation that

" . . . *if the notice given is not in strict conformity with the recording statute* the livestock market is not liable to the mortgagee for conversion." *Montana Meat Co. v. Missoula Livestock Auction Co.*, *supra* at 73, 230 P. 2d at 959 (emphasis added).

In explaining the significance of the *Montana Meat Co.* holding, the Montana Supreme Court declared that so far as it was concerned *Montana Meat Co.* did not give a stockyard immunity from liability for any sales it might make. *O'Connell Ranch Company v. Great Falls Livestock Commission Company*, 136 Mont. 23, 24, 343 P.2d 703 (1959). The *O'Connell* Court went on to distinguish *Montana Meat Co.* from the *O'Connell* facts and in so doing noted:

"In that case, however, the mortgagee had neglected to record his mortgage with the general recorder of marks and brands as required by statute in order to hold the stockyard liable for conversion." *O'Connell v. Great Falls Livestock Commission Co., supra* 136 Mont. at 34, 343 P.2d at 708.

The Court found *O'Connell* readily distinguishable from *Montana Meat Co.* because the stockyard had actual notice of the shipper's lack of authority to sell the cattle. *O'Connell v. Great Falls Livestock, supra* at 35, 343 P.2d 703. Implicit in the Court's observations concerning the *Montana Meat Co.* case is the recognition that § 52–319 must be strictly complied with before liability can be imposed on the seller.

■ After the decisions in *O'Connell* and *Montana Meat Co.*, but before the occurrence of the facts giving rise to this case, § 52–319 was amended. The amendments removed the requirement of filing with the county clerk and recorder but maintained the state filing requirement. However, substituted for the requirement of local filing by the mortgagee, the Legislature mandated that once the state filing was had "the department shall also list the notices in the offices of the stock inspectors, employed by the department of livestock and stationed at the central livestock markets where records are kept of marks and brands." § 52–319, R.C.M., 1947. A logical inference to be drawn from this amendment is that the amendment was intended to eliminate the dual filing requirement imposed on the mortgagee by the former statute; it was not intended to eliminate the necessity of some form of local notice or at least constructive notice, before liability would be imposed on the livestock marketeer.

The Montana Court has recognized that the Legislature can create special legislation to protect the livestock markets from liability if a valid security interest does not exist.

"If in the legislative wisdom social convenience is subserved by removal of certain obstructions in order that the sale of livestock may proceed in an orderly manner, the legislature is free to make such a classification." *Montana Meat Co. v. Missoula Livestock Auction Co.*, supra 125 Mont. at 72, 230 P.2d at 958.

■ A valid security interest did not exist in this case at the time the cow was sold because the defendant had not received notice of the security interest from the state department of livestock at the time of the sale. As such, the question of the defendant's liability under federal common law need not be reached; the remedy is not available to the plaintiff as the right from which it must arise was not valid according to Montana law. Liability cannot be imposed on the defendant seller unless the plaintiff's security interest was valid under Montana law. It was not, thus, the defendant should prevail. Therefore,

IT IS ORDERED that plaintiff's motion for summary judgment on Count V of the complaint be, and the same hereby is, denied.

IT IS FURTHER ORDERED that defendant's motion for summary judgment on Count V of the complaint be, and the same hereby is, granted.

IT IS FURTHER ORDERED that the Clerk is directed to enter, by separate document, judgment in favor of the defendant and denying plaintiff all relief prayed for on the basis of Count V of the complaint.