In re **DOUGLAS HEREFORD RANCH, INC.**, a Corporation, Debtor.

**DOUGLAS HEREFORD RANCH, INC.** a Corporation, Debtor-in-Possession, Plaintiff,

v.

**FARMERS AND MERCHANTS BANK**, Defendant.

Bankruptcy No. 485–00568.
Adv. No. 485/0076.

United States Bankruptcy Court, D. Montana.

April 21, 1986.

---

James A. Patten, Patten Law Firm, P.C., Billings, Mont., for debtor/plaintiff.

Carey Matovich, Matovich & Addy, Billings, Mont., for defendant.

## ORDER

JOHN L. PETERSON, Bankruptcy Judge.

At Butte in said District this 21st day of April, 1986.

On December 24, 1985, the Debtor-in-Possession filed an adversary Complaint to Void a Preference. The essential allegations of the Complaint recite:

"4. Within 90 days prior to the filing by the Debtor and Plaintiff of its petition for relief under Chapter 11 of the Bankruptcy Code, the Defendant perfected a security interest in the Debtor's livestock by recording and filing with the Montana Department of Agriculture, Brands Enforcement Division, a notice of security interest governing branded livestock. Copies of said filing are attached hereto as Exhibits 'A' and 'B' and by this reference incorporat-

ed herein. At the time of said perfection, the Debtor and Plaintiff was insolvent and affect of the transfer enables the Defendant to obtain more than it would receive under a Chapter 7 proceeding."

By answer, the Defendant admits it recorded a notice of security interest governing branded livestock within 90 days of the Debtor's bankruptcy petition, but that the perfected security interest in said property was perfected beyond the 90 day period beginning in 1975.

By stipulation of the parties they have agreed as follows:

1. The above-referenced adversary action may be resolved on the basis of the facts set forth in this Stipulation. Upon the filing of briefs by the parties, this matter will be deemed fully placed before the Bankruptcy Court for decisions. Debtor's initial brief shall be filed within fifteen (15) days of the date of this Stipulation. Farmers and Merchants Bank's Brief shall be filed fifteen (15) days thereafter, and Debtor's reply brief shall be filed five (5) days after the Bank's brief.

2. Attached thereto are: (i) a security agreement dated January 8, 1975 (Exhibit 'A'); (ii) a filing statement dated September 4, 1984 (Exhibit 'B'); (iii) a filing statement (date unknown) (Exhibit 'C'); (iv) filing statement filed January 10, 1975 (Exhibit 'D'); (v) a filing statement dated September 4, 1984 (Exhibit 'E'); (vi) a filing statement filed October 29, 1979 (Exhibit 'F'); (vii) a filing statement filed January 10, 1975 (Exhibit 'G'); (viii) a notice of security interest governing brand and livestock filed September 3, 1985 (Exhibit "H"); (ix) and a notice of security interest covering branded livestock September 3, 1985 (Exhibit "I"). These documents are true and genuine copies of the originals and may be considered by the Bankruptcy Court.

3. The Debtor is a corporation incorporated pursuant to the laws of the State of Montana in 1974.

4. Morris B. Douglas is the late husband of Cleone E. Douglas and the late

father of Paul O. Douglas. Connie Douglas is the wife of Paul O. Douglas.

5. In January, 1975, Morris B. Douglas, Cleone E. Douglas, Paul O. Douglas, and Connie Douglas were officers and/or shareholders of Douglas Hereford Ranch, Inc.

The facts can thus be summarized in this manner:

On January 8, 1975, a "State of North Dakota Security Agreement U.C.C. 6" was signed by Morris B. Douglas, Cleone E. Douglas, Paul O. Douglas and Connie F. Douglas. The Debtor named on that security agreement is the Douglas Hereford Ranch, Inc. The individuals signing that Security Agreement did, however, sign in their corporate capacities, as appears from the face of that agreement. In January, 1975, Morris B. Douglas, Cleone E. Douglas, Paul O. Douglas and Connie F. Douglas were officers and/or shareholders of the Douglas Hereford Ranch.

On January 10, 1975, the Defendant Bank caused to be filed with both the Wibaux County Clerk and Recorder and Montana Secretary of State financing statements covering, among other things, "all livestock" as collateral. Continuation statements were thereafter filed in each office. The Defendant never filed any documents with the Montana Department of Livestock, Brands Enforcement Division concerning this collateral until September 3, 1985, 59 days prior to the filing of Plaintiff's bankruptcy petition on October 21, 1985.

Based on these undisputed facts, the Plaintiff-Debtor contends that the Defendant Bank perfected its security interest in the Debtor's livestock within 90 days under Montana law, and such perfection being a transfer, constitutes a preference under Section 547 of the Code because the Debtor was insolvent at the time of perfection and as a result the Bank will receive more by reason of such transfer than it would under Chapter 7. The ultimate question at issue is what constitutes perfection of a security interest of livestock so as to be valid against the Trustee or Debtor-in-posses-

sion. A debtor-in-possession has the same powers as a Trustee. § 1107(a).

■ Under the so-called strong arm provisions of the Code, a Trustee "shall have, as of the commencement of the case, and without regard to any knowledge of the Trustee or of any creditor, the rights and powers of, or may avoid any transfer property of the Debtor" that is voidable by the perfect judgment lien creditor. § 544(a). Moreover, the definition of "transfer" under the Code is very broad and means "every mode, direct or indirect, voluntary or involuntary, of disposing of or parting with property or with an interest in property * * *". § 101(48). Perfection of a security interest in the Debtor's property is a transfer at the time of perfection of that interest. *McWilliams v. Gordon*, 12 B.R. 829, 4 C.B.C.2d 1059 (Bankr.E.D.Pa., 1981); *4 Collier on Bankruptcy*, 547.14, pp. 547–53/54; Section 30–9–301, M.C.A.

Section 547 of the Bankruptcy Code outlines some of a bankruptcy trustee's avoiding powers. The preference statute [547(b)] allows a debtor-in-possession to avoid any transfer of an interest in its property—

"(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the Debtor before such transfer was made;

(3) made while the Debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition;

\*    \*    \*    \*    \*    \*

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under Chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title."

Transfers can be avoided under this section if six elements are established. See *4 Col-*

*lier on Bankruptcy,* 547.35 at 547–119 (15th ed. 1079). A preference is (1) a transfer of property of the Debtor (2) to or for the benefit of a creditor (3) for or on account of an antecedent debt (4) made while the Debtor was insolvent (5) within 90 days before the filing of the petition (6) that allows the creditor to realize more than it would under a Chapter 7 liquidation than it would had the transfer not been made. We now turn to an analysis of the pertinent Montana statutes and case law on perfection of a security interest in livestock.

Section 30–9–203, MCA, governs the attachment and enforceability of security interests. That section notes that "a transaction, although subject to this chapter, is also subject to ... Sections 81–8–301 through 81–8–305 ..." Section 30–9–203(4), M.C.A. However, in order to perfect a security interest, the creditor must file a financing statement pursuant to Sections 30–9–401 and 303, M.C.A. It is true that 30–9–203(4), M.C.A., (Article 9 Montana Uniform Commercial Code) adopts by reference the requirements of this state's statutes relating to security interests concerning livestock. One must be careful to observe, however, that 30–9–203(4), states that "Failure to comply with any applicable statute has only the effect which is specified therein". In particular, Montana law requires the Montana Department of Livestock to accept and file notices of security agreements covering livestock owned by any person and bearing its recorded brand and list these notices on its official records of marks and brands. Section 81–8–301, M.C.A. The Department is required to transfer a copy of the notices and their accompanying brands to the central livestock markets located in this state. Significantly, as to the effect of failure to file such notice, "[a] livestock market to which livestock is shipped may not be held liable to any secured party for the proceeds of livestock sold through the livestock market by the Debtor unless notice of the security agreement is filed and a copy is transferred as hereinbefore provided". 81–8–301(1).

In *United States v. Shaver,* 447 F.Supp. 216 (D.C.Mont., 1978), U.S. District Judge Battin had occasion to discuss the meaning and application of both statutes under a case involving liability of a livestock auction yard. *Shaver* involved an action by the United States (USDA, Farmers Home Administration) against the Public Auction Yard in Billings (a central livestock market) for conversion of mortgaged cattle. On November 18, 1969, one Flanagan conveyed security interests in his cattle to the Farmers Home Administration. In late November, 1969, Farmers Home filed financing statements on the cattle with the State Brand Office. On December 3, 1969, Flanagan sold one of the cows covered by the financing statement through the Public Auction Yard in Billings. The State Brand Office transmitted the filing it had earlier received to the Montana Livestock Commission office in Billings after this sale on December 5, 1969. The United States sued the auction yard for conversion of its security interest.

Judge Battin noted that "Montana has a statute which sets forth the procedure for perfecting livestock security agreements". 447 F.Supp. at 217. He then proceeded to discuss the meaning and application of Section 52–319, R.C.M. 1947, the precedessor to Section 81–8–301, M.C.A., in light of the two Montana cases which likewise involved livestock auction yards. After analyzing *Montana Meat Co. v. Missoula Livestock Auction Co.,* 125 Mont. 66, 230 P.2d 953 (1951) and *O'Connell Ranch Company v. Great Falls Livestock Commission Company,* 136 Mont. 23, 343 P.2d 703 (1959), Judge Battin concluded that perfection of livestock security interests to insulate the auction yard from liability in Montana is a two-step process, and that "strict compliance" with the requirements of each step is necessary to the creation of a properly perfected security interest in cattle to fix liability on the auction yard. Id. at 221. Judge Battin held that the United States' security interest was not valid because the notice of filing had not been transmitted to the local livestock office prior to the sale. Since "a valid security interest did not exist in this case at the time the cow was sold,"

no liability for conversion could be imposed on the defendant auction yard.

The Ninth Circuit Court of Appeals affirmed Judge Battin's opinion in *U.S. v. Public Auction Yard, Billings, Mont.,* 637 F.2d 613 (9th Cir.1980). The Court of Appeals noted that "the only issue for appellate decision in this case is whether the District Court correctly interpreted and applied Montana law". The correctness of Judge Battin's interpretation and application of the statute was "beyond cavil". The Court of Appeals discussed *Batey Land & Livestock Company v. Nixon,* 172 Mont. 99, 560 P.2d 1334 (1977), and noted that deficient filings with the State Brand Office insulate livestock markets from conversion liability associated with the sale of otherwise encumbered cattle.

■ *Batey Land and Livestock Company,* supra, is the last decision by the Montana Supreme Court on the issue of perfection of security interests in livestock. In contrast to *Shaver, Montana Meat Co.* and *O'Connell Ranch Company,* supra, *Batey* involved parties asserting competing valid security interests in the same livestock. The importance of *Batey* to the present case is the language of the Supreme Court which breathes life into the last sentence of 30-9-203(4), quoted above. *Batey* held:

"The security agreement is the instrument which places the encumbrance on the Debtor's property. The financing statement is to evidence an encumbrance on the real or personal property of a Debtor and is filed with the Clerk and Recorder where the Debtor resides for the purpose of giving notice to third parties and perfecting the security interest, in compliance with the Uniform Commercial Code, Section 87-A-9-401, R.C.M. 1947 (now 30-9-401, M.C.A.).

The filing of notices of security agreement and notices of renewal of security agreement with the Montana Livestock Commission is in compliance with Section 52-319, R.C.M. 1947 (now 81-8-301, M.C. A.), *which seeks to protect livestock markets from liability for conversion arising out of the sale of livestock bur-*

*dened with liens. Montana Meat Co. v. Missoula Livestock Auction Co.,* 125 Mont. 66, 230 P.2d 955. (emphasis supplied).

The PCA *perfected* its security interest when it filed its financing statement on May 13, 1968, and listed 'all livestock' as being the collateral for the security agreement. This instrument, duly filed in the county where the Debtor resided, gave notice to third parties that PCA had a perfected lien on Braatons' cattle. PCA's failure to adequately describe the Heart bar H cattle on the notices of security agreement and the notice of renewal of security agreement would act as a bar to PCA *only if the cattle were sold by a livestock market and PCA was attempting to satisfy its lien by an action against the livestock market for conversion."* (emphasis supplied).

In the present case, there is no action against a livestock market for conversion, rather the issue is whether the Bank perfected its security interest in the Debtor's livestock by filing its financing statement under the. U.C.C. As noted in *Batey,* the distinction is critical. *Shaver* is clearly correct under the facts of that case, but those facts are not present in this case. I hold the Bank properly perfected its security interest in the Debtor's livestock by filing a financing statement with the County Clerk and Recorder of Debtor's residence long before 90 days of bankruptcy. As to the Debtor or Trustee in bankruptcy, it was not necessary to file notice of the security agreement with the Department of Livestock. Thus, one of the essential elements of a § 547 preference is lacking.

IT IS ORDERED that the Complaint is Dismissed with judgment for the Defendant.