**In re WHITE RIVER CORPORATION, Debtor.**

**Bruce BERNSTEIN, Trustee in Bankruptcy, Plaintiff,**

**v.**

**RJL LEASING, a General Partnership, and James Lyons, William P. Johnson, Ira C. Rothgerber, Jr., and Irene G. Rothgerber, General Partners, Defendants.**

**Bankrukptcy No. 84 B 00467 Mc.
Adv. No. 84 C 680.**

United States Bankruptcy Court,
D. Colorado.

Jan. 4, 1985.

Harry M. Sterling, Jonathan A. Margolies, Denver, Colo., for plaintiff.

Garry R. Appel, Denver, Colo., for RJL Leasing.

### FINDINGS, CONCLUSIONS AND ORDER ON TRUSTEE'S COMPLAINT TO RECOVER TRANSFERS

PATRICIA ANN CLARK, Bankruptcy Judge.

The matter before the Court is the trustee's complaint to recover three transfers of money from the debtor, White River Corporation, to the defendants. The trustee contends that the defendants received preferential transfers which can be avoided under Section 547 of the Bankruptcy Code (11 U.S.C. § 547). The defendants contend that the three transfers are protected from the trustee's avoiding power and assert affirmative defenses under Section 547(c)(1), (2) and (4) of the Code. A hearing was held on November 6, 1984, at which the parties submitted a Stipulation of Fact. No oral arguments were presented and both parties submitted briefs on this matter.

The facts are as follows. On December 2, 1980, RJL Leasing entered into a lease agreement with Dunne-Gardner Joint Venture. The Dunne-Gardner Joint Venture was composed of White River Corporation and Dunne-Gardner Petroleum. The subject of the lease agreement was one new Challenger Drilling Rig. The monthly rent was set at $23,000 and a security deposit of $23,000 was required. The lease provided that the rent be paid on the 15th day of each month.

On October 26, 1981, White River delivered to RJL its check in the amount of $46,567.12, in payment of the September and October rent under the lease plus interest. The check actually cleared White River's bank and was paid on November 6, 1981. This is the first transfer the trustee seeks to avoid.

On October 30, 1981, RJL and Dunne-Gardner Joint Venture entered into an Amendment to Lease Agreement. The amendment provided that the rent payments were increased to $30,000 per month and an additional security deposit of $7,000 was required.

On November 21, 1981, White River delivered to RJL its check in the amount of $30,000. The check actually cleared White River's bank and was paid on December 1, 1981. The payment was for the November rent under the terms of the Lease and the Amendment to Lease. This is the second transfer the trustee seeks to avoid.

On December 3, 1981, White River delivered to RJL its check in the amount of $7,000. The check actually cleared White River's bank and was paid on December 15, 1981. The payment was for the purpose of increasing the security deposit under the Lease from $23,000 to $30,000, pursuant to the terms of the Amendment to Lease

Agreement. This is the third transfer the trustee seeks to avoid.

Both parties stipulate that each of the three payments made by White River to RJL were made in the ordinary course of White River's business.

On January 12, 1982, the Dunne-Gardner Joint Venture was dissolved and terminated by voluntary action of the parties and the Lease was assigned to Dunne-Gardner Petroleum, Inc. RJL released White River from any and all obligation under the Lease and the Amendment to Lease.

The Lease, as amended, continued in effect until January 12, 1982 and White River remained in possession of the leased property until that date. RJL received monthly lease payments, other than those paid by White River, from Dunne-Gardner through January 12, 1982. White River made no payments to RJL on account of lease payments under the Lease after the $7,000 payment on December 3, 1981. White River Corporation filed its bankruptcy petition on February 2, 1982.

■ The applicable law is as follows. There are five elements of a preference action. *See* 11 U.S.C. § 547(b). If the trustee establishes all five elements, a transfer can be avoided unless the defendants prove a defense under Section 547(c). Here, based upon the stipulation of facts and exhibits, the Court finds that the three transfers meet all the elements constituting a preference. Accordingly, the defendants rely upon establishing one of the exceptions to the trustee's avoiding power. The Court will discuss each contested transfer individually, and subsumed within these discussions, will address the validity of the asserted defenses.

The first preferential payment occurred on October 26, 1981, when the debtor delivered to the defendants a check for $46,-567.12 in payment of the September and October rent. This check cleared the debtor's bank and was paid on November 6, 1981.

The defendants claim that this rent payment is excepted from the trustee's avoid-ing power because the transfer was in payment of debts incurred and paid in the ordinary course of business not later than 45 days after the debts were incurred. This affirmative defense is set forth in Section 547(c)(2), it provides:

> (c) The trustee may not avoid under this section a transfer—
>
> (2) To the extent that such transfer was
>
> (A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;
>
> (B) made not later than 45 days after such debt was incurred;
>
> (C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
>
> (D) made according to ordinary business terms.

11 U.S.C. § 547(c)(2)

Both parties agree that this rental payment (as well as the other two preferential payments) was for a debt incurred in the ordinary course of business and made according to ordinary business affairs. Since the only remaining element is the 45-day period, the Court's primary focus must be on determining the date the obligation was incurred and the date the transfer took place. If the transfer took place within 45 days from the time the debt was incurred, the transfer may not be avoided.

■ A debt is incurred whenever the debtor obtains a property interest in the consideration exchanged giving rise to the debt. *Barash v. Public Finance Corp.*, 658 F.2d 504, 509 (7th Cir.1981). *See also,* 4 *Collier on Bankruptcy,* ¶ 547.38 (15th ed. 1984). The trustee argues that the lease obligations were originally incurred on December 2, 1980, the date the lease was executed by the parties. The trustee asserts that the language within the lease that "the obligations and liabilities of Lessee ... shall be absolute and unconditional," render the agreement analogous to an installment contract. In installment contract cases, the "weight of authority holds

that the debt is incurred when the Debtor assumes the obligation and is not incurred anew every month when payment is due." *In re Goodman Industries, Inc.*, 21 B.R. 512, 521–22 (Bankr.D.Mass.1982).

■ Contrary to the suggestion of the trustee, the debt was not incurred when the lease was executed because, at that point in time, the total lease obligation was not due and payable. The lease obligation was only due and payable as the lease term progressed and as the lessee occupied the premises in accordance with the terms of the lease. *In re Mindy's Inc.*, 17 B.R. 177 (Bankr.S.D.Ohio 1982) (hereinafter referred to as *Mindy's*). The court in *Mindy's* concluded that, in the context of monthly payments made under a lease, the debt was incurred on the actual due date of the rental period. *See also, In re Clothes, Inc.*, 35 B.R. 489 (Bankr.D.N.D.1983); *In re Thomas Garland Inc.*, 28 B.R. 87 (Bankr.E.D.Mo.1983). For support the court looked to Section 365 of the Bankruptcy Code which provides that an unexpired lease on real estate is treated as an executory contract. Implicit in this section is the recognition that an unexpired lease involves an exchange, throughout the lease term, of rights and obligations by both the parties. Thus, despite the presence of boilerplate provisions such as "absolute and unconditional," the date the debt is incurred on an unexpired lease is the actual due date of the rent.

The defendants argue that the actual due date, pursuant to a provision in the lease, was on the 25th of each month. This position is not supported by an objective examination of the lease. The lease agreement and the amendment to the lease agreement expressly provide that the stipulated rent "shall be paid on the fifteenth day of each month." Consequently, the pertinent debts were incurred on the fifteenth day of September and October, 1981. The defendant's reference to the 25th of each month arises out of a section of the lease entitled "Events of Default/Remedies." It states that the lessee will be in default if it fails to make lease payments when due or within 10 days thereafter. Thus, this provision defines when a default on the rent obligation occurs and is not determinative of the date the rent obligation was incurred.

The other issue which must be resolved before it can be determined whether the challenged preferential payment falls within the 45-day period is the date the transfer actually took place. Section 547(e) defines transfer within the context of Section 547, it states:

(2) For the purposes of this section, except as provided in paragraph (3) of this subsection, a transfer is made—

(A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time;

(B) at the time such transfer is perfected, if such transfer is perfected after such 10 days; or

(C) immediately before the date of the filing of the petition, if such transfer is not perfected at the later of—

(i) the commencement of the case; and

(ii) 10 days after such transfer takes effect between the transferor and the transferee.

(3) For the purposes of this section, a transfer is not made until the debtor has acquired rights in the property transferred.

11 U.S.C. § 547(e).

Unfortunately, this statute sheds little light on when a transfer is made in the context of a preferential payment by check. On October 26, 1981, the debtor delivered to the defendant its check in the amount of $46,567.12 for the September and October rent. This check did not clear debtor's bank until November 6, 1981. Herein lies the controversy. The trustee asserts that transfer by check is "made" on the date the check is honored. The defendants maintain that the date of transfer is the date the check is delivered rather than the date it is honored.

■ This Court acknowledges that there is a split of authority on this issue. (For circuits recognizing the transfer date when

the check is honored, *see Fitzpatrick v. Philco Finance Corp.*, 491 F.2d 1288 (7th Cir.1974); *Nicholson v. First Investment Co.*, 705 F.2d 410 (11th Cir.1983). For circuits recognizing the transfer date as the date of delivery, *see O'Neill v. Nestle Libbys P.R. Inc.*, 729 F.2d 35 (1st Cir.1984); *Shamrock Golf Co. v. Richcraft, Inc.*, 680 F.2d 645 (9th Cir.1982).) This Court, however, has consistently held that the date of transfer is the date the bank honors the check rather than the date of delivery. *See In re Brent Explorations, Inc.*, 31 B.R. 745 (Bankr.D.Colo.1983); *Dale Seyler, Trustee v. Mockleman Broyles Grain Company*, No. 81–C–0137 (Bankr.D.Colo. 1981); *In re Balducci Oil Company, Inc.*, No. 83–C–0506 (Bankr.D.Colo.1983). A payment by check is not equivalent to payment with cash. Only when the drawee bank honors the check does property actually leave the debtor's account and a transfer takes place.

■ Since the bank honored the check on November 6, 1981, that portion of the preferential transfer attributable to September's rent is outside the 45-day period and is avoidable. The debt for September's rent was incurred on September 15th and the check cleared the bank 52 days later. (The fact that the last nine days of September fall within the 45-day period has no bearing on this result because the rent was not incurred on a daily basis.) The debt for the October rent was incurred on October 15 and the check cleared the bank 22 days later. Consequently, the portion of the check attributable to October's rent is within the 45-day period and is excepted from the trustee's avoiding power.

■ The second preference occurred on November 21, 1981 when the debtor delivered to the defendants a check in the amount of $30,000 as payment for the November rent. Using the analysis outlined above, the Court notes that the debt for the November rent, under the terms of the lease, was incurred on November 15, 1981. The check actually cleared the bank on December 1, 1981. Thus, this transfer occurred 16 days after the date the debt was incurred and is excepted from the trustee's avoiding power under Section 547(c)(2).

The third preferential payment occurred on December 3, 1981 when the debtor delivered a check in the amount of $7,000 to the defendants. This check cleared the debtor's bank on December 15, 1981 and was for the purpose of increasing the security deposit in accordance with the terms of the Amendment to Lease Agreement.

The defendants raise three defenses to the trustee's claim that this payment is subject to avoidance. The first defense is the Section 547(c)(2) exception set forth above. Once again, the sole issue before this Court is whether the transfer occurred within 45 days from the date the debt was incurred.

■ The defendants concede in their brief that the debtor incurred its obligation to pay the increased security deposit on the date that the lease amendment was executed, October 30, 1981. The transfer took place when the check cleared the bank on December 15, 1981, 46 days later. Clearly, this preferential payment does not meet the timeliness requirements set forth in Section 547(c)(2) and the defendants cannot avail themselves of this exception.

The defendants also argue that the $7,000 preference was a contemporaneous exchange for new value constituting an exception within the meaning of Section 547(c)(1). This provision provides that a trustee may not avoid a transfer:

(1) [T]o the extent that such transfer was—

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange; ....

11 U.S.C. § 547(c)(1).

The defendants maintain that they gave new value to the debtor contemporaneously to receiving the $7,000. That new value consisted of both the defendants' forebearance from pursuing its remedies which be-

came available upon the debtor's default (failure to pay the September and October rent in a timely manner pursuant to the lease) and the consideration provided in exchange for executing the amended lease agreement.

The term "new value" is defined in the context of preferences as follows:

> "[N]ew value" means money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, ... but *does not include an obligation substituted for an existing obligation;* .... (Emphasis added.)

11 U.S.C. § 547(a)(2).

A creditor who gives new value in exchange for the receipt of a preferential transfer from the debtor has not depleted the debtor's estate to the detriment of other creditors. This comports with the basic purpose behind the trustee's avoiding powers, which is to promote a "policy of equality of distribution among creditors of the debtor." H.R.Rep. No. 595, 95th Cong., 1st Sess. 177–78 (1977) *reprinted in* 1978 U.S. Code Cong. & Ad.News 5963, 6138.

■ Forebearance of one's contractual remedies does not constitute new value within the meaning of Section 547(c)(1) as defined in Section 547(a)(2). *Matter of Duffy,* 3 B.R. 263 (Bankr.S.D.N.Y.1980) (hereinafter referred to as *Duffy*). The court in *Duffy* noted that such forebearance was of no economic solace to the creditors of the estate if it could not reasonably offset the diminution of the estate caused by the preferential transfer. *Duffy,* 3 B.R. at 266. In the instant case, the estate does not stand to benefit economically by the defendants' agreement not to pursue its default remedies provided by the lease.

■ The defendants' claim that they exchanged consideration to enter into the Amended Lease Agreement may be accurate under contract principles, but it does

not fall within the ambit of "new value." It constitutes a substitution of the Amended Lease Agreement for the original Lease Agreement. An obligation substituted for an existing obligation is expressly excluded from the definition of "new value" in Section 547(a)(2). Clearly, the defendants have failed to establish that there was a contemporaneous exchange for new value, and the exception under Section 547(c)(1) is not applicable.

The last affirmative defense raised by the defendants is that the preferential transfers are excepted from the trustee's avoiding power to the extent that the defendants gave new value to the debtor subsequent to the transfers. Section 547(c)(4) provides that the trustee may not avoid a transfer,

> (4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—
>
> (A) not secured by an otherwise unavoidable security interest; and
>
> (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor; ....

11 U.S.C. § 547(c)(4).

The defendants argue they gave the debtor new value when they permitted White River to remain in possession of the leased property until January 12, 1982, despite White River's failure to make lease payments subsequent to its payment of the November rent.

■ For Section 547(c)(4) to apply, three requirements must be met: (1) The creditor must extend new value as defined in Section 547(a)(2). (2) The new value must be unsecured. (3) The new value must go unpaid. *Matter of Bishop,* 17 B.R. 180, 183 (Bankr.N.D.Ga.1982). The defendants fail to meet the third requirement since they ultimately received full satisfaction for any rental claims they might otherwise have against the debtor. The defendants stipulated that they received monthly lease payments through January 12, 1982, from Dunne-Gardner, the debtor's joint venturer. This covers in the

entirety any new value extended by the defendants and renders relief under Section 547(c)(4) inapplicable.

For the foregoing reasons, it is ORDERED that the trustee's complaint to recover transfers is granted only for that portion of the transfers attributable to payment of the September, 1981, rent and for the transfer delivered on December 3, 1981 for the increased security deposit; thus the defendants shall pay over to the trustee the sum of $30,068.05 [1] plus costs, and plus interest (at the legal rate, from the date of demand for the transfers, February 7, 1984). Absent any evidence that RJL Leasing, a general partnership, cannot meet its obligations as herein ordered, the Court renders judgment against the partnership and not the partners individually.

FURTHER ORDERED that the parties shall have 10 days from the date this Order becomes final to file a written request for the withdrawal of all exhibits received in evidence, after which time the exhibits will be destroyed by the Clerk without further order of the Court.

---

**1.** The $68.05 represents the interest on the late September rent from September 16 to September 21. The interest due for the last nine days of September and from October first through the 25th is not recoverable. Unlike the debt for the rent, interest debt does accrue daily and the last nine days of September and all of October fall within the 45-day period.