In re Dan L. WEY, a/k/a Danny Lee Wey, Debtor.

Robert L. SULLIVAN, Trustee in Bankruptcy, Plaintiff-Appellant,

v.

William W. WILLOCK, Jr., and Adelaide I. Willock, Defendants-Appellees.

No. 86–3028.

United States District Court, C.D. Illinois, Springfield Division.

Oct. 29, 1987.

Luedtke, Hartweg & Turner, Robert L. Sullivan, Trustee, George L. Chesley, Bloomington, Ill., for plaintiff-appellant.

Larry L. Thompson, D. Scott Hargadon, Chicago, Ill., John L. Swartz, Springfield, Ill., for defendants-appellees.

## OPINION ORDER

MILLS, District Judge:

Bankruptcy appeal.

Bankrupt contracted to purchase hotel—$520,000 down payment—forfeiture if $4,680,000 not paid in 6 months—default—sellers kept down payment and retained title to hotel.

The trustee in bankruptcy appeals under 28 U.S.C. § 158 from a final order of the bankruptcy court dismissing his amended complaint to set aside the contract forfeiture. He argues the forfeiture is both preferential and fraudulent within the meaning of §§ 547 and 548 of Title 11. Pursuant to Bankr.Rule 7012, the adjunct tribunal held that the pleading failed to state a cause of action.

The circumstances which give rise to the instant controversy are not in dispute. The complaint's factual allegations must be accepted as true. Bankr.Rule 7012 (adopting Fed.R.Civ.P. 12(b) standards); *In re Rick Michael's Ford, Inc.*, 7 B.R. 763, 768 (Bankr.N.D.Ill.1980). Its conclusions of law, however, are not admitted. *See In re Oien*, 22 B.R. 720, 721 (Bankr.D.S.D.1982). Rather, these are fervently debated.

For the reasons expounded herein, the trustee necessarily loses the debate. Judgment affirmed.

### I

Defendants-Appellees, William and Adelaide Willock, own a hotel located in the Virgin Islands. In April 1984, the couple contracted to sell the fee to the debtor, Dan Wey, for $5,200,000. Under the terms of the accord, Wey was to submit 10% of the purchase price as a down payment, with the remainder becoming due and payable at the closing set for September 30, 1984. The contract further provided that should the purchaser default, the agreement would be deemed a nullity and prior payments forfeited:

> *Default by Purchaser.* In the event that the Sellers are able to convey a good and marketable fee simple title to the premises, and the Purchaser shall default under the terms of this contract, then this contract shall be terminated and be deemed null and void, and any and all payments theretofore made by the Purchaser on account of the purchase price, shall be forfeited to the Sellers as liquidated damages without any further loss, cost, damage or right of remedy in favor of either party against the other.

Although Wey managed to remit the initial half million dollars, he failed to pay the balance due. On October 2, the Willocks notified him of his default and consequent forfeiture of $520,000. Four weeks later, the debtor was adjudicated a bankrupt. The trustee then instituted this action to set aside the contract forfeiture.

## II

The trustee first alleges that the sellers' retention of Wey's down payment is a voidable preference under § 547 of the Bankruptcy Code:

[T]he trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition ...

(5) that enables such creditor to receive more' than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). Before a transaction may constitute a preference, the trustee must prove the existence of each element. *Id.* § 547(g); *In re White River Corp.,* 50 B.R. 403, 406 (Bankr.D.Colo.1985); *In re Mobley,* 15 B.R. 573, 575 (Bankr.S.D.Ohio 1981). The purpose of the statute is to discourage unusual conduct by either the debtor or his creditors during the former's decline into bankruptcy so that equality among the estate's claimants might be promoted. Senate Rep. No. 95–989, 95th Cong.2d Sess. 88 (1978); House Rep. No. 95–595, 95th Cong. 1st Sess. 373 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787.

### A. Transfer

■ Relying on the Court of Appeals decision in *In re Commodity Merchants,* 538 F.2d 1260 (7th Cir.1976), the bankruptcy court found that the forfeiture was not a transfer. Instead, it believed the only transfer occurred at the time of the down payment well before the 90–day preference period: "[T]he Willocks did not receive any

right at the default that they did not already have at the time of the signing of the contract." *Order,* No. 384–01536 at 3 (Bankr.C.D.Ill. Dec. 11, 1985).

Perhaps the quote is literally true. Nevertheless, this forum cannot agree with the basis for the lower court's holding.

The Code defines a transfer as—

Every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property....

11 U.S.C. § 101(48). Congress undoubtedly intended this definition to be "as broad as possible"—to encompass any surrender of an interest in property. Senate Rep., *supra* at 27; House Rep., *supra* at 314, U.S. Code Cong. & Admin.News 1978, pp. 5813, 6271; *In re Lemley Estate Business Trust,* 65 B.R. 185, 189 (Bankr.N.D.Tex. 1986); *In re Queen City Grain, Inc.,* 51 B.R. 722, 726 (Bankr.S.D.Ohio 1985). Applying this meaning, the Court concludes the forfeiture embodied a transfer.

Wey possessed equity in the real estate worth $520,000 directly following his down payment. Moreover, he held valuable rights under the sales accord which were readily marketable. These facts are indisputable. Upon the debtor's inability to tender the remaining balance on September 30, however, the contract by its own terms lapsed. At that point, Wey had nothing while the Willocks had both unfettered title to the property and one-half million dollars. Whether viewed as an interest in the land or the contract, the purchaser parted with property, albeit involuntarily, as a result of his default. The agreement's provision allowing such does not affect this determination.

*Commodity Merchants,* 538 F.2d at 1260, is not to the contrary. In that case, the seller under certain commodity contracts rejected them pursuant to their terms. When the buyer's bankruptcy ensued ten days later, the trustee sought to avoid the cancellation as a preferential transfer within § 60 of the former code, 11 U.S.C. § 96, arguing the debtor was deprived of its property right to resell the

agreements. Reasoning that the "essence of a transfer is the relinquishment of a valuable property right," the Court disagreed. *Id.* at 1263. Since the contracts forbade the bankrupt to assign them without the vendor's permission and were not freely transferrable due to their "red flag termination provisions," they had no market value. *Id.* at 1263–64. Accordingly, the termination did not result in the debtor's "relinquishment of a valuable property right."

In the case at bar, the Court cannot reach a like conclusion. The facts are clearly distinguishable from those of *Commodity Merchants*. As noted, Wey owned an equitable interest in the fee prior to the forfeiture. His agreement with the Willocks was presumably worth at least the down payment to an assignee. But after September, he had nothing. Unlike the debtor in *Commodity Merchants*, surely the bankrupt here unwillingly abandoned a gainful proprietary concern.

Nevertheless, the trustee is still not entitled to prevail under § 547. The transfer cannot be deemed to have occurred "on account of an *antecedent* debt," but rather may be said to have transpired simultaneous to its creation. *See* 2 W. Norton, *Bankruptcy Law & Practice* § 32.07 (1987) (if the transfer precedes or is simultaneous to the debt, no preference is involved).

### B. Antecedent Debt

■ Before the trustee may avoid the transfer, subpart (b)(2) of § 547 requires that it have been made "on account of an antecedent debt owed by the debtor." The Code does not define the term "antecedent debt." Collier in his learned treatise, however, states: "[A] debt is 'antecedent' if it is incurred before the transfer." 4 L. King, *Collier on Bankruptcy* § 547.05 (15th ed. 1987). Consequently, the Court asks when the liability arose.

The great weight of authority—including that of the Seventh Circuit—holds a debt is contracted when a debtor becomes legally obligated to pay. *Barash v. Public Finance Corp.*, 658 F.2d 504, 510 (7th Cir. 1981); *In re Emerald Oil Co.*, 695 F.2d 833, 837 (5th Cir.1983); *In re Iowa Premium Service Co.*, 695 F.2d 1109, 1111 (8th Cir.1982) (en banc); *In re Almarc Mfg., Inc.*, 52 B.R. 582, 585 (Bankr.N.D.Ill.1985); Levin, *An Introduction to the Trustees Avoiding Powers*, 53 Am.Bankr.L.J. 173, 187 (1979). This is a logical deduction:

> The Bankruptcy Code defines debt as a "liability on a claim." 11 U.S.C. § 101(11). "Claim" in turn is defined as a "right to payment...." 11 U.S.C. § 101(4)(A). Thus, a debt is incurred when a debtor becomes legally bound to pay.

*In re Gold Coast Seed Co.*, 751 F.2d 1118, 1119 (9th Cir.1985). Courts have relied on such rationale to find a debt arises under a contract only after the creditor has tendered performance. *See, e.g., Id.* (debt under forward contract incurred upon shipment of goods, not when debtor executed agreement); *Emerald Oil*, 695 F.2d at 837 (debt incurred on date when services are performed rather than date of billing); *In re Economy Milling Co.*, 37 B.R. 914, 921 (D.S.C.1983) (while in a credit transaction the debt becomes legally binding as soon as credit is extended, debt under option contract is not incurred until option is exercised); *White River*, 50 B.R. at 407 (debt was not incurred when lease was executed since total obligation was not due and payable at that time); *In re Wathan's Elevators, Inc.*, 37 B.R. 870, 871–72 & n. 4 (Bankr.W.D.Ky.1984) (delivery is causative point because that is when debtor becomes obligated).

In this instance, both parties seem to assume that Wey was indebted to the Willocks prior to September 30. Their assumption is incorrect. The contingent nature of the vendee's promise is important to understand. *See Iowa Premium*, 695 F.2d at 1111. Following his down payment, Wey had no legal obligation to yield one dime on account of the contract for sale until the closing date. Then, only if the sellers were able to convey a good and marketable title—to tender performance— would he become indebted to them. *See In re Blanton Smith Corp.*, 37 B.R. 303, 307

(Bankr.M.D.Tenn.1984) (debt incurred when performance provided).

Because the trustee acknowledges the bankrupt's default in his amended complaint, it follows that appellees were indeed prepared to offer clear title to the premises on September 30 in exchange for Wey's final remuneration. When he was unable to perform, the buyer thus became indebted to the sellers. At that time, the agreement expired on its own. As the bankruptcy court properly noted:

> It is abundantly clear that the notice [sent to Wey] itself was not the instrument that affected any contract rights. The contract, by its own terms, had terminated when closing of title did not take place on September 30, 1984. The contract had provided that time was of the essence and, in case of default, the contract would be terminated and null and void. (*Order* at 2.)

Wey's failure to submit the $4,680,000 balance due and payable resulted in a debt to his creditors which was promptly quenched by the forfeiture clause contained in the sales accord. The moment the debtor transferred his $520,000 equity in the property was the moment he became legally obligated to pay the Willocks.

The Court can find no antecedent debt. The trustee's complaint fails to state a cause of action under 11 U.S.C. § 547.

### III

■ As an alternative to his § 547 claim, the trustee maintains the transfer was fraudulent and hence avoidable pursuant to § 548 of the Code:

> The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily— ...
>
> (2)(A) received less than a reasonably requivalent value in exchange for such transfer or obligation; and
>
> (B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent

as a result of such transfer or obligation. . . .

11 U.S.C. § 548(a). To establish a fraudulent conveyance, all rudiments incorporated into the statute must be present. *In re Ristich,* 57 B.R. 568, 574 (Bankr.N.D.Ill. 1986); *In re Verna,* 58 B.R. 246, 248 (Bankr.C.D.Cal.1986).

Unable to locate a transfer from the forfeiture, the bankruptcy court could find nothing deceitful about it. This Court has since determined, however, that the forfeiture did effectuate a transfer. Thus, accepting his factual allegations regarding the debtor's insolvency as true, the trustee could prevail if Wey "received less than a reasonably equivalent value in exchange for such transfer." Appellant argues the bankrupt did not receive anything as a result of his default. The Court cannot agree. Despite the debtor's delivery of an interest in property, the trustee's position remains without merit.

Subsection (d)(2)(A) defines "value" to include "satisfaction or securing of a *present* or antecedent debt of the debtor." 11 U.S.C. § 548 (emphasis added). Applying this definition to the controversy at bar, it is quite apparent that the forfeiture resulted in the satisfaction of a present debt.

Wey, as the Court has explained, incurred a legal obligation to remit the contract balance of over $4 million once the Willocks became willing to convey him marketable title on the final day of September. But that indebtedness was extinguished by the clause providing for the agreement's termination. In exchange for his down payment, Wey was released from his contractual duty. Certainly the debtor did not obtain "less than a reasonably equivalent value" when he transferred $520,000 to satisfy a $4 million debt.

### IV

The termination of the sales contract and resulting forfeiture of the debtor's down payment constitutes neither a preferential transfer or fraudulent conveyance within the meaning of 11 U.S.C. §§ 547, 548.

*Ergo,* the judgment of the bankruptcy court dismissing the trustee's amended complaint for failure to state a claim upon which relief can be granted must be and is AFFIRMED.