In re Richard J. CARMEL, Debtor.

Jay A. STEINBERG, as Chapter 7 Trustee for the Debtor, Plaintiff,

v.

RODMAN & RENSHAW, INC., Cowen 7 Co., Interbanc Equity Corporation and James K. George, Defendants.

Bankruptcy Nos. 84 B 3676, 87 A 223.

United States Bankruptcy Court, N.D. Illinois, E.D.

Oct. 18, 1988.

James Ossyra, Hopkins & Sutter, Chicago, Ill., for plaintiff.

---

Walter Soroka, Chicago, Ill., for defendants.

## MEMORANDUM OPINION INCORPORATING FINDINGS OF FACT AND CONCLUSIONS OF LAW

ERWIN I. KATZ, Bankruptcy Judge.

This matter comes before this Court on cross-motions for Summary Judgment brought by Plaintiff, Jay A. Steinberg, ("Trustee"). As Chapter 7 Trustee for the debtor, Richard J. Carmel ("Carmel"), and Defendant, James K. George, ("George"). This Memorandum Opinion shall incorporate Findings of Fact and Conclusions of Law pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable herein by Bankruptcy Rule 7052.

### FINDINGS OF FACT

1. This bankruptcy case was commenced by the filing of an involuntary petition against Carmel on March 22, 1984. The case was converted to Chapter 7 on March 14, 1985. On March 18, 1985 Jay A. Steinberg was appointed Trustee. This adversary proceeding was commenced March 13, 1987.

2. In June of 1984, Carmel asked George to purchase Carmel's 1983 Toyota Supra ("Car"). Carmel knew that George did not have funds to pay for the Car. Carmel suggested that George use the Car as collateral for a loan. George would then use the proceeds of the loan to trade an option account on Carmel's behalf. Carmel and George thereupon signed a document reflecting these intentions.

3. George then accepted an assignment of title to the Car, took that title to the First National Bank of Wheeling ("Bank") and obtained a loan for $10,500. George then used the bank loan for investment in options on Merrill Lynch and other stock or stock indexes, all for Carmel and at Carmel's direction. Any profit or loss from the options trading were to be Carmel's. Eventually Carmel suffered a complete loss on these transactions.

4. Upon entering into the car purchase transaction, George took the title, keys and possession of the Car. Soon thereafter George agreed with Carmel that Carmel would take possession of the Car, with Carmel to make the payments on the Bank loan to George as rent for the Car. Carmel made those payments on the Bank loan to George, continuing to make those payments as long as he retained possession of the Car.

5. Carmel retained possession of the Car throughout 1984 and up to some point after March 18, 1985. George took possession of the Car after March 18, 1985 and before June 10, 1985, when Carmel was incarcerated.

6. George made the payments on the Bank loan to George from the time he took possession of the Car. George subsequently sold the Car and paid off the Bank loan.

### CONCLUSIONS OF LAW

1. Carmel transferred the Car to George in June of 1984, within the meaning of Bankruptcy Code Section 549(d)(1).

2. This adversary proceeding is barred under Bankruptcy Code 549(d)(1) because it was commenced more than two years after the date of the transfer of the Car.

### DISCUSSION

These cross-motions for summary judgment present the issue of whether the Car purchase transaction between Carmel and George in June of 1984 is a transfer for purposes of Bankruptcy Code Section 549(d)(1). If that transaction is such a transfer, it occurred more than two years prior to the Trustee's filing this adversary proceeding. This proceeding would then be barred under Bankruptcy Code Section 549(d)(1), even though the car purchase transaction concededly took place post-petition and was not authorized by the court, and even though that car purchase transaction would otherwise be subject to the Trustee's avoidance powers.

The term "transfer" is defined in Bankruptcy Code Section 101(50) as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property, or with an

interest in property, including retention of title as a security interest, and foreclosure of the debtor's equity of redemption." Congress intended this definition to be all-inclusive and as broad as possible to encompass any surrender of an interest in property, whether the transfer is of legal title or of possession, custody or control. Senate Report No. 95–989, 95th Cong. 2d Sess. 26–27(1978); House Rep. No. 95–595, 95th Cong. 1st Sess. 373 (1977), U.S.Code Cong. & Admin. News, 1978 p. 5787; See *In Re Wey*, 78 B.R. 892, 894 (C.D.Ill.1987); *In Re Lemley Estate Business Trust*, 65 B.R. 185, 189 (Bkrtcy. N.D.Tex., 1986); *In Re Queen City Grain, Inc.*, 51 B.R. 722, 726 (Bkrtcy. S.D. Ohio, 1985). Furthermore, "what constitutes a transfer, and when it is complete within the meaning of the Code is necessarily a federal question, since it arises under a federal statute intended to have uniform application throughout the United States." *In Re Trois Etolis Inc.*, 78 B.R. 237, 238 (9th Cir. B.A.P.1987).

George clearly acquired an interest in the Car in June of 1984. He was listed as the title holder on the certificate of title issued by the Illinois Secretary of State. He could dispose of the car or lease it, as he actually did. He acquired these interests in the Car from Carmel at that time, that is, in June of 1984. Carmel's disposition of and parting with those interests in the Car to George fit within the definition of transfer in Bankruptcy Code Section 101(50) regardless of whether that disposition was subject to avoidance or whether it was legal or rightful.

Since the existence of a transfer is determined by federal standards, the Illinois cases cited by the Trustee are not conclusive. Particularly, the Trustee cited *Superior Partners v. Professional Education Network, Inc.*, 138 Ill.App.3d 226, 93 Ill. Dec. 8, 485 N.E.2d 1218 (5th Dist.1985) for the proposition that there can be no transfer of interest in personal property unless both title and possession are transferred. That case stated that a transfer without a change of possession is void as to creditors and subsequent *bona fide* purchasers. That appears to mean only that a such

transfer is voidable, not that it is void. Creditors and purchasers adversely affected must exercise their powers of avoidance to invalidate such a transfer. Until they do, the transfer is good as against the world. Under that standard, Carmel's transfer to George was effective in June of 1984, subject only to the Trustee's power of avoidance.

Under Bankruptcy Code Section 549(d)(1), that power of avoidance must be exercised within two years after the date of the transfer sought to be avoided. The mandate of Section 549(d)(1), read in conjunction with Section 101(50), is clear, plain and unambiguous and will be enforced according to its terms. See *In Re H.I.A. of Mt. Vernon*, 80 B.R. 944, 946 (Bkrtcy.S.D. Ill.,1987); *In Re Secrist*, 71 B.R. 268, 269 (Bkrtcy.D.Nev.,1987). Pursuant to that mandate, since the Trustee failed to exercise his power to avoid the car purchase transaction on or before June of 1986, the Trustee has lost that power of avoidance.

Accordingly, Defendant George's Motion for Summary Judgment is granted and the Plaintiff Trustee's Motion for Summary Judgment is denied.